ORSON FLAGG v. THE PEOPLE.

*Confession under duress.*

A confession was obtained from a weak minded person under arrest for crime, by telling him that the best thing he could do was to own up, giving him drink, and taking him in irons to a lawyer's office where he was interrogated with bolted doors and in the presence of those who were hostile to him, and where his answers were taken down in writing and sworn to. *Held* that the confession was not voluntary and could not be used against him.

Error to Benzie. Submitted April 23. Decided April 24.

CRIMINAL INFORMATION for setting fire to and burning a saw mill in the night time.

*Edwin S. Pratt* for plaintiff in error. A confession by one accused of crime must be voluntary to be admissi-

ble against him. *Reg. v. Warringham*, Leading Crim. Cases, 487; *Com. v. Tuckerman*, 10 Gray, 173; *Com. v. Knapp*, 9 Pick., 507: 10 Pick., 489; *Com. v. Taylor*, 5 Cush., 605; *Com. v. Whittemore*, 11 Gray, 201; *Com. v. Howe*, 2 Allen, 153; *Com. v. Curtis*, 97 Mass., 574; *State v. Bostick*, 4 Har., 563; *State v. Grant*, 22 Me., 171; *Rex v. Upchurch*, 1 Moody C. C., 465; *Thomas' Case*, 6 C. & P., 353; *Shepherd's Case*, 7 C. & P., 579; *People v. McMahon*, 15 N. Y., 384; Cooley's Const. Lim. [3d ed.], 314; it is inadmissible if obtained through hope or fear, *Warickshall's Case*, 1 Leach, 263; Roscoe's Crim. Ev., 39; Tiffany's Crim. Law, 496; *Queen v. Johnston*, Lead. Crim. Cases, 504; or by any promise or inducement, however slight, from a person in authority, 2 Hawkins P. C. [2d ed.], ch. 46, sec. 3, n. 4, p. 604; 2 Russ. on Crimes, 826; *Stephen v. State*, 11 Ga., 225; *State v. Harman*, 3 Har., 567; or by impressing the accused with the belief that the prosecution is sure of his guilt, and frightening him into throwing himself on their mercy without promising that it shall be given, *Rex v. Mills*, 6 C. & P., 146; confessions have been excluded because of such statements to the prisoner as these: "I am in great distress about my irons; if you will tell where they are I will be favorable to you," *Cass' Case*, 1 Leach C. C., 293; "No doubt thou wilt be found guilty: it will be better for you to confess," *Sherrington's Case*, 2 Lewin's C. C., 123; "You had better tell the truth, or it will lie upon you, and the man go free," *Rex v. Pulley*, 5 C. & P., 539; "It will be better to speak the truth," *Reg. v. Garner*, 2 C. & K., 920; "You had better tell the truth," *Couley v. State*, 12 Mo., 462; *Lambeth v. State*, 23 Miss., 322; *Spears v. Ohio*, 2 Ohio St., 583.

Attorney General *Otto Kirchner* for the people. The confession of a prisoner is *prima facie* admissible against him, *Norris v. Hurd*, Walk. Ch., 102; Roscoe's Crim. Ev., 40, 55; the burden of proving that an inducement

has been held out or improper influence used to procure it, rests on the prisoner, *Reg. v. Garner*, 2 C. & K., 920.

MARSTON, J.  It would be somewhat difficult to properly characterize the remarkable course adopted in this case to induce the respondent to make a confession, and it would be still more difficult to say that it could, under the circumstances, be used as evidence against the respondent when on trial.  The course adopted by the detective, Moore, at the jail, and what took place the next day at the time the statement made was reduced to writing, was so contrary to all modern principles of fairness and justice that it could not and cannot be tolerated.

We here give the detective's own version of what took place at the jail the evening before the confession was made.  "When I asked him he denied setting fire to the mill.  I told him I knew he did know something about it.  I spoke mild, as I talk to you now.  He again denied it as usual.  I told him the best thing he could do, if he knew any thing about it, was to own it up.  I don't know what he said next.  After a while I said I understand Jackson is arrested and has squealed on Flagg in burning the mill.  He then said: There is more into it than me.  I wanted him to tell who and he would not do it.  I wanted him to tell who the other parties were.  Told him he had better make a statement and tell who the parties were.  I repeated the words perhaps a dozen times that 'you had better make a statement.'  I told him he would have to see the prosecuting attorney about turning State's evidence.  I said it would be better for him, because I wanted to get it out of him.  I get no pay for coming up here except my expenses.  The party who gets me to go out has to pay the city for my time and expenses and salary.  I remained in jail but a short time.  Went away and came back again about eight o'clock.  I asked him who the parties were who were with him.  I thought I could knock it out of him.  It was because I saw he was a weak one, and I thought I could knock it out of him.  It seems I did get it out of him.  He asked me for a drink of whisky and I gave him a drink.  We both took a drink and I left the bottle empty with him.  It was a half-pint bottle and was about half full.  It was before he told me he would go and make a

statement that I gave him the whisky. In the morning I told Fay I had come up to take him before a justice."

Here follows what took place at the time the first confession was made the next day, and the circumstances under which it was made:

"The defendant came to the office with Mr. Moore, a detective. He was apparently in his custody and under arrest. I understood that he was arrested the day before in Manistee. This was between ten and twelve o'clock in the forenoon. Defendant had been kept in jail over night. I understood that he (Flagg) wanted to be brought to the office. He had handcuffs on when he came in and was taken away in the same manner. Mr. Connover was present most of the time. Mr. D. B. Butler and Mr. Moore were present all the time. The most of the conversation was minuted down by Mr. Butler. The talk was mostly put by me in the form of interrogatories, in the same manner you would interrogate a witness. Mr. Butler wrote a memorandum of the conversation, which was signed by Mr. Flagg. The door to the office was locked a portion of the time he was there. I think Mr. Moore was employed by the owners of the mill. He was in my office one hour and a half, or thereabouts."

When a party under arrest is told by the officer that the best thing he can do is to own up—that he had better make a statement;—when it is supposed that a statement can be forced—"knocked"—out of him because "he was a weak one;" when intoxicating liquors are furnished him to aid in the forcing process; and when on the following morning he is taken in irons to the office of an attorney, and there, in the presence of those hostile to him, with bolted doors, is interrogated, his answers reduced to writing and sworn to, it is idle to say that such a confession was free and voluntarily made, even although the witnesses may testify that no inducements were made or held out to him. See *People v. Thomas,* 9 Mich., 318.

It is probable that some of these parties were acting in good faith without a full knowledge of what had taken place previously, but this would not change the legal or moral aspects of the question here raised.

Legally and morally a more serious offense was com-

mitted in the efforts to extort a confession than the respondent was guilty of, even if his confession was true, as it was a perversion of the process of the law,—"a poisoning of the fountains of justice."

Striking out the confessions, which clearly could not be used against the respondent, the court should have instructed the jury to acquit him. There was nothing left.

The judgment should be reversed and the prisoner discharged.

The other Justices concurred.