THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v LUIS DE JESUS, Appellant.

First Department, July 13, 1978

APPEARANCES OF COUNSEL

*Diana A. Steele* of counsel (*Martin Erdmann* and *William E. Hellerstein,* attorneys), for appellant.

*Jerrold Tannenbaum* of counsel (*Robert M. Pitler* with him on the brief; *Robert M. Morgenthau, District Attorney),* for respondent.

## OPINION OF THE COURT

FEIN, J.

Defendant appeals from his conviction of felony murder. The issue is whether defendant's statement was properly received in evidence.

At approximately 3 A.M. on September 20, 1974, Mr. and Mrs. Gardos were returning home after having parked their car in a garage on West 108th Street, Manhattan. According to Mrs. Gardos they were approached by defendant and one Benson. Defendant was holding a knife with a blade about seven inches in length. He put the knife to the witness' stomach and told her not to scream because, "I kill you." Benson was pushing her husband toward the wall of a building. When defendant found that the witness had no money, he hit her on the head and she fell against the wall of the building losing consciousness. When she regained consciousness, she observed defendant and Benson standing over her husband who was lying on the sidewalk. When she started screaming the assailants fled. Five witnesses corroborated the occurrence. However, none, other than Mrs. Gardos, identified the defendant. One witness identified Benson.

In his statement, the reception of which is here in dispute, defendant claimed to be "halfway down the block" at the time of the stabbing. From that distance he saw Benson "and the old man was struggling * * * he was stabbing the old man with the knife." Defendant identified Benson from a picture displayed to him by a police officer. Defendant denied participation in the robbery. Mr. Gardos died in the hospital in the early morning hours.

On October 3, 1974 sometime between 12 noon and 1 P.M., police detectives went to the apartment of defendant's sister. They took defendant into custody after finding him on the third-floor fire escape. He was taken to the 26th Precinct station house where he was read his rights from a printed form. He stated he did not wish to say anything but he did not request an attorney. Mrs. Gardos was brought to the station house. At about 3:30 P.M. she picked defendant out from a lineup. Defendant's motion to suppress Mrs. Gardos' identification of him was denied. No issue was raised upon this appeal concerning the propriety of the lineup proceedings. However, defendant contends that once the identification took place he should have been immediately arraigned and would thus have had the benefit of counsel. But this did not occur.

After the lineup, defendant's *Miranda* rights were read to him, again from a printed form. He again stated he did not wish to answer any questions. Although detectives asked him no further questions at that point, one of them told him that the police knew the identity of the other assailant and that defendant had been identified at the lineup. Defendant did not request an attorney. It was not until 5:30 P.M. that the Assistant District Attorney in charge of homicide cases for that day was called, in accordance with police procedure requiring this prior to an arrest for homicide. When called, the Assistant District Attorney asked the detective whether defendant would talk to him. The detective spoke with defendant. The detective then informed the Assistant District Attorney, "The defendant will talk to you but he won't tell you anything." The Assistant District Attorney decided to go to the station house. Because of rush hour traffic, he did not arrive until 7:00 P.M. During all this time defendant was not being kept in a cell. He was in a room which contained a cot upon which he could lie down. He was advised he could use the telephone and was permitted to talk to his sister who brought him food.

When the Assistant District Attorney arrived at the station house, he did not proceed to interrogate the defendant immediately. Instead he had seven or eight witnesses to the murder brought to him. After interviewing the witnesses and also defendant's sister and her common-law husband, the Assistant District Attorney started to talk to defendant at approximately 12:30 A.M.

Although defendant had not been formally arrested, it is plain, as the Trial Justice found, that defendant was in custody. The Assistant District Attorney entered the room with a stenographer and a detective. He set up a tape recorder, and the stenographer set up her equipment. The Assistant District Attorney then gave defendant the *Miranda* warnings. The defendant answered that he would answer questions without an attorney.

Defendant indicated that he had heard about the incident a couple of days after it occurred. He denied any involvement in it, and stated that, from about 1:30 A.M. until the morning, he had been in his sister's apartment, watched television with his sister's common-law husband Donald, and went to sleep about 2:15 A.M. The Assistant District Attorney told defendant that Donald had given a completely different story, that he had

witnesses who said they had seen defendant stab the old man, that appellant was not telling the truth, to which appellant responded:

"A. I'm telling you the truth. I got nothing to say.

"Q. That's your story?

"A. (Witness nodding head up and down).

"Q. You had nothing to do with the stabbing?

"A. (Witness nodding head from side to side).

"Q. You're sticking to the story about what time you got home. It doesn't make any difference at all that Donald told me a completely different story?

"A. That's right."

Defendant then requested another lineup. The Assistant District Attorney accused him of lying and warned him the only way he could help himself would be to reveal the identity of the other assailant:

"Q. I'm telling you your story isn't straight. Your story doesn't jibe with what your sister told me and your story doesn't even jibe with what Donald told me plus we got these people that saw you there with another guy and saw you both rob this man and stab him. You're lying. We got you caught in all these lies. The only way you can help yourself is if you tell me who the other guy who was involved. Otherwise you're going to take the whole blow for this. You want to tell me anything.

"A. How would I be helping myself, you tell me that.

"Q. You would be helping yourself if you tell me who the other guy was that you were with you would be helping yourself.

"A. (Witness nodding head from side to side).

"Q. Cause you know or if you don't know that if you get convicted for murder you can go to jail for life. If you cooperate, tell me what I want to know, who the other guy was I can help you out. That's the only way you can help yourself cause it's too late now. The story you told me tonight is a bunch of lies."

Obtaining no response, the Assistant District Attorney persisted:

"Q. I told you if you tell me who the other guy was I'll give you a break, otherwise you're going to get hit for the whole murder and that's life imprisonment * * *

"Q. If you stick with what you told me now I can tell what's going to happen. You're going to get arrested for murder and you're gonna get tried for murder and you're gonna get convicted for murder and you're going to go away for life. All right, that's what's going to happen. If you cooperate I said I'll give you a break on the case. What I'm talking about a break I can get you a break on a lot of time. Life imprisonment is a long, long time. Your only chance is to help yourself is to cooperate."

Defendant's response only related to his fear of Benson. Nevertheless, the Assistant District Attorney continued the pressure:

"Q. * * * I'm telling you straight. That's all I can tell you. You're not talking about two years, three years in jail, something like that (you just did two years, right?). I'm talking about life. You're a young fellow. How old are you 21? You got a lot of life ahead of you. It's your choice. You can spend it all in jail or you can help yourself.

"A. As far as the stabbing, I didn't do no stabbing."

Defendant then made the statements describing the robbery and identifying Benson.

The question and answer session ended at about 1:30 A.M. The Assistant District Attorney then directed that the defendant be arrested and charged with the murder of Mr. Gardos. Defendant was arraigned that morning when court opened.

The motion to suppress was denied by Justice SILVERMAN who found that defendant's statement, "I am telling you the truth. I got nothing else to say", did not constitute a refusal to answer questions but that, "It was, rather, a refusal to change his story and his insistence that his story was the true story." The court found that there was a reasonable basis for inferring that defendant had voluntarily changed his mind and that it was not a case of continued importunity or coercive interrogation. Although the court found that the long delay in arraigning the defendant was as a matter of law "unnecessary delay" within the meaning of CPL 140.20, the court ruled there was no such improper conduct or undue pressure as impaired defendant's physical or mental condition to the extent of undermining his ability to make a choice whether or not to make a statement.

On the trial, the Justice instructed the jury that there was

unnecessary delay in this case in bringing the defendant to court. However, he continued:

"But that's not the end of the matter, because the question before you is not just was there unnecessary delay in bring him the police station—in bringing him to court—I charge you there was—the question before you is whether to consider the confession—and a confession is not to be vitiated, not to be disregarded solely because it has been procured during a delay in arraignment or even unlawful detention, but the question is not whether there was an unnecessary delay in bringing him to the police station, but whether the totality of improper conduct, if there was some unnecessary delay, was improper conduct and improper pressure was such that it impaired the defendant's physical and mental condition to the extent of undermining his ability to make a choice whether or not to make a statement.

"That yours to judge. All the circumstances. Not just whether there was unnecessary delay.

"One of the circumstances to consider: was it unnecessary delay? It's only one circumstance. It's not decisive."

On this appeal, defendant contends that this unnecessary delay amounted to a denial of defendant's right to the assistance of counsel. This is premised on the contention that had the defendant been arraigned promptly, as the law requires, counsel would have been provided for him long before the time when the Assistant District Attorney obtained the statement relied upon. No cases have been cited or found which hold that such a delay amounts to a denial of counsel. In *People v Carbonaro* (21 NY2d 271) the court pointed out that while such a delay is properly to be considered by the hearing court as a relevant factor in assessing voluntariness, it is not dispositive. The court held such delay did not constitute denial of counsel in the absence of proof counsel was requested. Here the court on the motion to suppress gave such consideration and on the trial properly charged the jury that the unnecessary delay should be considered in assessing voluntariness. There is no merit to the suggestion that CPL 140.20 is not applicable because that section requires arraignment "without unnecessary delay" after the arrest. Although the formal arrest here did not take place until after midnight when the court was closed, it must be held that as a matter of law defendant was in custody during all the hours between 1:00 P.M. on October 4 and the opening of court on October 5,

including the hours during the night when the statement was obtained from him. The statute was violated. There was unnecessary delay. However, this does not necessarily import the conclusion that this constituted denial of counsel and required suppression of the statement. *People v Hobson* (39 NY2d 479), relied upon by defendant, holds only that once a lawyer has entered a criminal proceeding, in connection with criminal charges under investigation, the defendant in custody may not waive his right to counsel in the absence of the lawyer. Since no lawyer had entered this case at the time the statement was taken, *Hobson* is of no avail to defendant. In *People v Blake* (35 NY2d 331, 340), also relied on by defendant, the delay was held not to invalidate postarrest identification of defendant in the absence of counsel, although the court did state "an undue delay is prima facie a suspect circumstance suggesting that the delay may have been for the purpose of depriving the accused of counsel at a viewing."

Although the "unnecessary delay" here is "a suspect circumstance" it is not necessary to conclude that the delay in and of itself required the suppression of the statement on the limited ground that the delay denied the right to counsel.

CPL 60.45 (subd 2, par [b], cl [i]) provides that a confession is involuntary when it is obtained from a defendant "(b) By a public servant engaged in a law enforcement * * * (i) by means of any promise or statement of fact, which promise or statement creates a substantial risk that the defendant might falsely incriminate himself". The quoted statements made by the Assistant District Attorney palpably amounted to a promise. The defendant was told, "The only way you can help yourself is if you tell me who the other guy who was involved. Otherwise you are going to take the whole blow for this." "If you cooperate, tell me what I want to know, who the other guy was I can help you out." "You would be helping yourself if you tell me who the other guy was that you were with you would be helping yourself out." "I told you if you tell me who the other guy was I'll give you a break otherwise you are going to get hit for the whole murder and that's life imprisonment". And finally, "I am telling you straight. That's all I can tell you. You're not talking about 2 years 3 years in jail something like that (you just did 2 years, right?) I'm talking about life. You're a young fellow how old are you 21? You've got a lot of life ahead of you. It's your choice. You can spend it all in jail or you can help yourself."

Obviously overborne, defendant then started to talk and made the statement relied upon. These statements by the Assistant District Attorney violated the statute. Although no cases have been cited or found interpreting this provision in the statute it is clear that a promise was being made to the defendant. The promise was repeated in a variety of forms. It was a promise of a substantially more lenient sentence if there was co-operation. This was plainly interdicted by the statute. (See *State v Biron,* 266 Minn 272; *State v Mullin* 249 Iowa 10.)

Even if we were to hold that the promises, taken alone, did not create a substantial risk that defendant might falsely incriminate himself, we must consider whether the promises, taken together with the long "unncessary delay", also violative of the statute, require the conclusion that the statement was not voluntarily made. The People and the Assistant District Attorney violated the statute in two vital respects, relating to the voluntariness of the statement. The totality of circumstances establishes that defendant's rights were so impaired as to require that the statement be excluded. Exclusion is required where the statement is taken under circumstances undermining defendant's ability to make a choice whether or not to make a statement and creating a "substantial risk that the defendant might falsely incriminate himself". By these standards the statement should have been suppressed.

Accordingly, the judgment rendered January 5, 1976, Supreme Court, New York County (SILVERMAN, J., at suppression hearing and trial, and LANG, J., at sentencing), upon a jury verdict convicting defendant of the crime of murder in the second degree, felony murder (Penal Law, § 125.25) and sentencing him to a term of 20 years to life should be reversed, on the law and the facts, defendant's motion to suppress should be granted and the matter should be remanded for a new trial.

KUPFERMAN, J. P. (dissenting). The majority opinion fairly analyzes the facts and sets forth the problem. The disagreement is in the conclusion.

The Trial Justice properly presented the question of delay and its consequences to the jury, and implicit in their determination of guilt was a rejection of the position that it made the confession involuntary. As to the conclusion that a promise

was made creating a "substantial risk that the defendant might falsely incriminate himself", analysis of the language used by the Assistant District Attorney leads only to the conclusion that it was a paraphrase of Ben Franklin's Poor Richard's maxim "God Helps Them That Help Themselves".

I would affirm.

BIRNS, J. (dissenting). I join in the dissent. Whether or not there was such unnecessary delay in arraignment as to render the defendant's "confession" involuntary was properly submitted to the jury.

Moreover, I do not believe that there was such a "promise" made by the Assistant District Attorney as to violate the provisions of CPL 60.45 (subd 2, par [b], cl [i]).

EVANS and SANDLER, JJ., concur with FEIN, J.; KUPFERMAN, J. P., and BIRNS, J., dissent in separate opinions.

Judgment, Supreme Court, New York County, rendered January 5, 1976, reversed, on the law and the facts, defendant's motion to suppress granted and the matter remanded for a new trial.