THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v WILLIAM PERRY, Appellant.

First Department, November 20, 1980

*Joseph A. Phillips* for appellant.

*Jeffrey W. Meyers* of counsel *(Joyce P. Adolfsen* with him on the brief; *Robert M. Morgenthau, District Attorney,* attorney), for respondent.

### OPINION OF THE COURT

KUPFERMAN, J. P.

At approximately 6 P.M. on March 7, 1977, two police officers observed defendant on the roof of a building on West 149th Street in Manhattan. The defendant was familiar to both officers from photographs of known burglars circulated in the precinct station house and from a previous arrest made by one of these officers. The officers arrested defendant for burglary some 10 minutes later on a nearby avenue. There had actually been a burglary at the building on West 149th Street.

Defendant had not properly raised the issue of the legality of his arrest in his motion papers in accordance with the requirements of CPL 710.60, but he made such a request at the outset of the *Huntley* hearing. At that suppression hearing the court determined, after reading the Grand Jury minutes, that there had been probable cause to stop and question defendant and, therefore, limited the hearing to the issues of whether defendant had been given his *Miranda* warnings, and whether defendant's confession had been voluntarily made.

■ The record before this court is insufficient to determine if the People have met their burden of establishing probable cause to arrest defendant. There is no indication therein as to whether the arresting officers knew of the burglary at the building where defendant was observed on the roof, nor any indication of the source of any such knowledge. The case is therefore remanded for a hearing properly to determine this issue.

■ At this time, however, the majority of this court does uphold the determination that, under the applicable constitutional and statutory standards, defendant's confession was voluntarily given and properly admissible, if it is found there was probable cause for the arrest.

Immediately upon his arrest, defendant was advised of his *Miranda* rights. The arresting officers then told him they had seen him on the rooftop. Defendant denied being on the rooftop, but stated that he had been at the building to visit a "numbers" man, and he repeated his story when the officers took him back to that first building. After a preliminary investigation of the burglarized apartment revealed nothing to incriminate him, defendant was taken to the precinct station house at approximately 7:30 P.M. There he was again advised of his *Miranda* rights. Defendant acknowledged and validly waived these rights, and that waiver is not contested on appeal.

Defendant was interrogated by the arresting officers at the precinct for the next 45 minutes. Again defendant repeated his original story. After several repetitions of this story, the officers explained to defendant that, if he did not wish to co-operate, they would "try" to have the case sent to the Grand Jury, they would "explain the circumstances to the D. A. and see what the prosecutor might say", and they would "push this as far as we can". They told defendant he was going to be charged with burglary in the second degree but that, if he confessed, they would speak to the District Attorney and "it might be burglary three, however it was strictly up to the D. A.". When these exhortations did not seem to persuade defendant to change his story, the officers responded with "Okay, it is going to be (burglary) two". Defendant asked what would happen "if I tell you what you want me to tell you?" An officer replied "I just want you to tell me the truth. If you tell me the truth, I'll speak to the D. A., but it's all up to him". At this point, defendant gave a full confession, providing details of his entry and the location of the stolen property.

We agree with the determination at the conclusion of the suppression hearing that defendant's confession was voluntarily made, and that defendant's right to due process was not violated. The conduct here at issue is not constitutionally prohibited.

■ Defendant contends that his confession was not voluntary but was, in fact, illegally procured by the coercive tactics of his interrogators so as to violate the constitutional

standards for an admissible confession as set forth in *Bram v United States* (168 US 532). In order for a confession to be deemed voluntary as a waiver of Fifth Amendment rights, it must not have been "extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence". *(Bram v United States, supra,* at p 542-543.) Defendant maintains that the officers' action in informing him that burglary in the second degree (a felony carrying a maximum sentence of 15 years imprisonment) would be charged, and then raising the possibility of a lesser charge of burglary in the third degree (also a felony, but with a maximum sentence of seven years imprisonment) if defendant confessed, constituted such an impermissible threat and implied promise.

■ Here we encounter a situation where there had initially been a question of the precise time of the criminal activity and of the precise time of sundown, which times were determinative to the degree of crime to be charged. Even if, as it appears, the defendant's police interrogators had already decided on a charge in a lesser degree, this does not by itself invalidate the resulting confession. We do not have the long hours of questioning and other techniques which, when viewed as a whole, were characterized as an "emotional battering" that could overcome a particular defendant's will. *(People v Bay,* 76 AD2d 592, 600, lv to app granted.).

Defendant was in custody for a total of less than three hours and had been interrogated for only 45 minutes when he confessed. Furthermore, we note that defendant has had extensive experience with the criminal justice system, including numerous arrests and convictions, some of these for burglary in both the second and third degrees. He was familiar with police procedure, and he made a valid waiver of his *Miranda* rights. He was fully capable of appreciating the consequences of confessing at the time he gave the confession.

Nor was there any impermissible promise extended, express or implied. The officers at all times said only that they would speak to the District Attorney and request a lower

charge if defendant told the truth, and always with the caveat that the final decision rested with the District Attorney, as indeed it does. *(People v Eboli,* 34 NY2d 281; cf. *Oyler v Boles,* 368 US 448, 456.) There were no absolute assurances given that defendant's co-operation would result in more favorable treatment.

The confession was also voluntary under CPL 60.45, the New York statute governing the admissibility of statements of criminal defendants. Under this statutory language, promises or statements of fact alone are insufficient to evoke the exclusionary rule, but must rise to the level of those promises or statements which create a substantial risk that a defendant might falsely incriminate himself. *(People v Diaz,* 77 AD2d 523, 526 [concurring opinion of SILVERMAN, J.].) These statements, urging defendant to tell the truth and offering only the possibility, but not a promise, of what defendant was led to believe would be a lesser charge, are not the kind which involve a substantial risk of inducing a false confession, as was found in *People v De Jesus* (63 AD 2d 148, app dsmd 48 NY2d 734; see *People v Tarsia,* 50 NY2d 1, 12-13).

Inasmuch as less than three hours elapsed between arrest and confession, and there was no intervening event, it is clear that the confession was obtained as the direct result of the arrest. If the arrest is determined to have been without probable cause, then the confession must be excluded. *(Brown v Illinois,* 422 US 590, 605.) The concluding statement of the majority opinion in *Dunaway v New York* (442 US 200, 219) would then be applicable to the facts in this case. "Satisfying the Fifth Amendment is only the 'threshold' condition of the Fourth Amendment analysis required by *Brown.* No intervening events broke the connection between petitioner's illegal detention and his confession. To admit petitioner's confession in such a case would allow 'law enforcement officers to violate the Fourth Amendment with impunity, safe in the knowledge that they could wash their hands in the "procedural safeguards" of the Fifth.' " The judgment of the Supreme Court, New York County (GORMAN, J.) rendered October 19, 1977, convicting defendant, upon his plea of guilty, of the crime of attempted burglary

in the third degree, should be held in abeyance and the case remanded solely for a hearing to determine if there was probable cause for arrest.

FEIN, J. (dissenting in part). I concur with the majority that the record is insufficient to determine whether the People have met their burden of establishing probable cause to arrest defendant. However, I dissent from the majority's conclusion that defendant's confession was voluntary and admissible if it is found that there was probable cause for the arrest.

It is plain that defendant validly waived his *Miranda* rights. However, during the police interrogation at the precinct over a period of 45 minutes defendant repeated several times that he had been at the building at which the alleged burglary took place to visit a "numbers man". The police officers then made clear to defendant that if he did not wish to cooperate they would see to it that he was charged with burglary in the second degree rather than burglary in the third degree, although the officers knew and had already determined that the maximum crime with which the defendant was chargeable was burglary in the third degree. The maximum sentence for burglary in the third degree is seven years, and in the second degree is 15 years.

Among the statements made by the police were "Well, if that's your attitude, you don't want to speak, don't want to cooperate, I intend to talk to the district attorney and we'll push this as far as we can." The defendant was told that if he confessed the officers would speak to the District Attorney's office to see that the case would not go to the Grand Jury. If defendant did not tell the officers what he was doing in the building they would speak to the District Attorney to attempt to have the case brought to the Grand Jury. When defendant continued to insist that he had been in the building "to see a numbers man" the officer said, "Okay, it is going to be two". One of the officers testified he told defendant, "We had gone through this numerous times. Now you are going to be charged with Burglary Two." There were other statements by the police, the substance of which was that if the defendant confessed he would be charged only with burglary three, but if he failed to do so the charge would be

burglary two. When defendant asked what would happen if he told the police what they wanted to know, the officer replied, "We would speak to the d.a.'s office and see about the charge being Burglary Three." Only then did defendant confess the burglary.

It is now urged that there was indeed a question whether there was a basis for charging the defendant with burglary two in the light of the time of his criminal activity. Insofar as pertinent here, the degree of crime depends upon whether such acts occurred at night. The time was March 7, 1977, sometime between 6 and 7 P.M.

"A person is guilty of burglary in the second degree when he knowingly enters or remains unlawfully in a building with intent to commit a crime therein, and when * * *

"2. The building is a dwelling and the entering or remaining occurs at night" (Penal Law, § 140.25, subd 2).

If the event occurs during the daytime the crime is burglary in the third degree (Penal Law).

Subdivision 4 of section 140.00 of the Penal Law provides: " 'Night' means the period between thirty minutes after sunset and thirty minutes before sunrise." The contention now is that there was truly an inquiry as to whether defendant could have lawfully been chargeable with burglary second because the pertinent events occurred sometime between 6 and 7 P.M. on March 7, 1977. However, it is significant that the police had already decided that the defendant could only be guilty of burglary three because of the time.

It is plain that defendant's confession was a result of police pressure and a promise of a substantially more lenient charge if there was cooperation, and a threat of a more serious charge if there was none. Such a promise makes the confession involuntary, taken in violation of the privilege against self incrimination. The constitutional standard for an admissible confession is that it "must be free and voluntary: that is, must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence. . . . A confession can never be received in evidence where the prisoner has been influenced by any threat or

promise; for the law cannot measure the force of the influence used, or decide upon its effect upon the mind of the prisoner, and therefore excludes the declaration if any degree of influence has been exerted." *(Bram v United States,* 168 US 532, 542-543.) Measured by that standard, defendant's confession was involuntary and should have been suppressed because it was obtained in violation of the Fifth Amendment to the Constitution. The privilege against self incrimination applies to involuntary confessions. *(Miranda v Arizona,* 384 US 436, 461-462.) The privilege against self incrimination embodied in the Fifth Amendment fully applies to State criminal trials. *(Malloy v Hogan,* 378 US 1.)

The manner in which the confession was obtained also made it involuntary and inadmissible pursuant to our Criminal Procedure Law. CPL 60.45 (subd 2, par [b]) makes a confession involuntary if obtained: "By a public servant engaged in law enforcement activity or by a person then acting under his direction or in cooperation with him: (i) by means of any promise or statement of fact, which promise or statement creates a substantial risk that the defendant might falsely incriminate himself". Here there was a promise by the police of a substantially more lenient charge if there was cooperation. Such promise required that the confession be suppressed *(People v De Jesus,* 63 AD2d 148, app dsmd 48 NY2d 734).

As the majority states, here we do not have the long hours of questioning and other techniques held to overcome the defendant's will in *People v Bay* (76 AD2d 592 [lv to app granted]). However, we do have direct promises of preferred treatment, denounced in *Bram (supra)* and in CPL 60.45 (subd 2, par [b]). What is more serious is that the promises were only to charge the defendant with the maximum crime of which he could be found guilty, coupled with the threat that he would be charged with a higher crime if he did not cooperate.

The People argue that defendant, an experienced criminal, well knew the distinction between burglary two and burglary three. This argument defeats itself. Defendant also undoubtedly knew that the testimony of the police as to when the events occurred might be crucial in determining

the crime with which he could be charged and of which he could be convicted. Since the only evidence that the burglary took place about 6 P.M. was defendant's confession, and the police did not arrest him until 7 P.M. after having observed him on a rooftop at 6 P.M., it is manifest that the confession was obtained by a threat and a promise which the Constitution and the statute interdict.

Accordingly, the judgment appealed from should be reversed, the plea of guilty should be vacated, the suppression motion granted and the action remanded for further proceedings.

SULLIVAN, LUPIANO and LYNCH, JJ., concur with KUPFERMAN, J. P.; FEIN, J., dissents in part in a separate opinion.

Determination of appeal from judgment, Supreme Court, New York County, rendered on October 19, 1977, held in abeyance and the case remanded solely for a hearing to determine if there was probable cause for arrest.