PEOPLE v CARIGON

Docket No. 57753. Submitted June 4, 1982, at Grand Rapids.—Decided September 26, 1983. Leave to appeal applied for.

Timothy R. Carigon was convicted of arson of real property, Ionia Circuit Court, Charles W. Simon, Jr., J. Defendant appealed, alleging that the trial court erred in determining that the defendant's confession was voluntarily made and in denying defendant's motion to suppress the confession. *Held:*

The Court of Appeals reviews a determination of voluntariness by looking at the totality of the circumstances surrounding the giving of the confession and will not reverse the trial court's finding unless it is clearly erroneous. The facts in this case indicate that the defendant's statements were made voluntarily. The investigating officer's indications to the defendant that things would go easier on him if he would confess were not such as to constitute an improper express or implied promise of leniency. Under all the circumstances, there is no definite and firm conviction that the trial court erred in allowing admission of the confession.

Affirmed.

MACKENZIE, J., dissented. She would hold that the statements of the investigating officer to the defendant constituted improper promises of leniency and that those statements induced the defendant's confession. Being involuntary, the confession was improperly allowed into evidence. She would reverse.

REFERENCES FOR POINTS IN HEADNOTES

[1, 3, 6, 8] 29 Am Jur 2d, Evidence §§ 582, 590.
  Admissibility of pretrial confession in criminal case—Supreme Court cases. 1 L Ed 2d 1735, 4 L Ed 2d 1833, 12 L Ed 2d 1340.
[2] 29 Am Jur 2d, Evidence §§ 588, 589.
[3, 8] 29 Am Jur 2d, Evidence § 543 *et seq.*
[4] 29 Am Jur 2d, Evidence § 585.
[5] 29 Am Jur 2d, Evidence § 563.
[6] 5 Am Jur 2d, Appeal and Error § 898.
[7] 29 Am Jur 2d, Evidence §§ 638, 640.

OPINION OF THE COURT

1. CRIMINAL LAW — CONFESSIONS — APPEAL — TOTALITY OF CIRCUM-
   STANCES.

   A trial court's determination of the voluntariness of a defendant's
   confession is reviewed on appeal by consideration of the totality
   of the circumstances; the lower court's finding will not be
   reversed unless it is clearly erroneous.

2. CRIMINAL LAW — CONFESSIONS — BURDEN OF PROOF.

   The burden is on the prosecution to show by a preponderance of
   the evidence that a defendant's confession, offered in evidence,
   was voluntarily made.

3. CRIMINAL LAW — CONFESSIONS — APPEAL — TOTALITY OF CIRCUM-
   STANCES.

   The "totality of the circumstances" test for reviewing a lower
   court's determination of the voluntariness of a defendant's
   confession includes consideration of: (1) the duration and condi-
   tions of detention, (2) the manifest attitude of the police toward
   the accused, (3) the physical and mental state of the accused,
   and (4) diverse pressures which sap or sustain the accused's
   powers of resistance or self-control.

4. CRIMINAL LAW — CONFESSIONS — APPEAL.

   Deference will be given to the findings of a trial court which, in
   determining whether a defendant's confession was voluntarily
   made, was confronted with a conflict in the testimony and was
   obliged to determine the credibility of the witnesses and decide
   whom to believe.

5. CRIMINAL LAW — CONFESSIONS — EVIDENCE.

   A promise, express or implied, by an investigating officer to a
   defendant, that a confession, if given, will aid in the defense or
   result in a lesser sentence, is prohibited and renders the
   confession obtained thereby inadmissible.

DISSENT BY MACKENZIE, J.

6. CRIMINAL LAW — CONFESSIONS — APPEAL.

   *The Court of Appeals reviews a trial court's finding that a
   defendant's confession was voluntary by examining the whole
   record and making an independent determination of voluntari-
   ness; if, after such a review, the Court of Appeals does not
   possess a definite and firm conviction that the trial court erred,
   it will affirm.*

7. CRIMINAL LAW — SENTENCING — REFUSAL TO ADMIT GUILT.

> A sentence may not be based even in part on the defendant's refusal to admit guilt.

8. CRIMINAL LAW — CONFESSIONS — EVIDENCE.

> The test for admissibility of a confession is whether the confession was made freely, voluntarily, and without compulsion or inducement of any sort; if it was obtained by any direct or implied promises, however slight, it is considered to be involuntary.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Randy H. Smith,* Prosecuting Attorney, and *Mary C. Smith,* Assistant Attorney General, for the people.

*Van Hattum, Hickman & Harrison, P.C.* (by *Walter L. Harrison),* for defendant on appeal.

Before: R. B. BURNS, P.J., and MACKENZIE and L. C. ROOT,* JJ.

L. C. ROOT, J. Defendant was convicted after a jury trial of arson of real property, MCL 750.73; MSA 28.268, and sentenced to one year in the Ionia County jail and five years probation. He appeals as of right.

The issue on appeal concerns the voluntariness of defendant's confession made to police officers while being questioned about his involvement in the crime. At a *Walker*[1] hearing held on February 2, 1981, the trial judge held defendant's confession to have been voluntarily made, and denied his motion to suppress. This Court reviews such a determination of voluntariness by looking at the totality of the circumstances and will not reverse the lower court's finding unless it is clearly errone-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] *People v Walker (On Rehearing),* 374 Mich 331; 132 NW2d 87 (1965).

ous. *People v Dean,* 110 Mich App 751, 754; 313 NW2d 100 (1981). The prosecution must have proven voluntariness, *People v White,* 401 Mich 482, 494; 257 NW2d 912 (1977), proof by preponderance of evidence being necessary to discharge this burden, *People v Sears,* 124 Mich App 735; 336 NW2d 210 (1983).

The facts presented in this appeal compel us to address the question of whether the totality of circumstances test is applicable where a defendant claims that his confession was induced by a promise of leniency made by the interrogating officer.

The United States Supreme Court has held that a confession is involuntary if "extracted by any sort of threats or violence, [or] obtained by any direct or implied promises, however slight, [or] by the exertion of any improper influence". *Bram v United States,* 168 US 532, 542-543; 18 S Ct 183; 42 L Ed 568 (1897). See also *Hutto v Ross,* 429 US 28; 97 S Ct 202; 50 L Ed 2d 194 (1976), and *Brady v United States,* 397 US 742; 90 S Ct 1463; 25 L Ed 2d 747 (1970).

Although the rule itself is amply established, the manner in which it is to be applied is the subject of considerable controversy, as evidenced by the split decision of our own Supreme Court in *People v Jones,* 416 Mich 354; 331 NW2d 406 (1982). There the defendant made an inculpatory statement during plea negotiations which he had initiated. When the defendant refused to abide by the agreement, the statement was used against him at trial and he was convicted of murder. This Court rejected the defendant's contention that his confession was involuntary, finding that under the "totality of the circumstances" the defendant's confession was admissible. The Supreme Court reversed in two opinions of equal numerical force.

Quoting the operative language from the *Bram* opinion Justice KAVANAGH found that promises of leniency existed per the plea agreement and that "[t]here is no question but that Jones's confession was 'obtained by' the prosecutor's promise". *People v Jones, supra,* p 362. Absent was any discussion concerning the circumstances attending the confession; the opinion was thus suggestive of an absolutist or "per se" application of the *Bram* rule.

Justice RYAN concurred in the result on the grounds that MRE 410, under which statements made in connection with a plea of guilty, later withdrawn, are not admissible in a criminal proceeding against the person who made the plea, required reversal despite the failure of defendant's trial counsel to invoke the rule. The concurring opinion, however, insisted that the establishment of a per se rule of involuntariness was inappropriate and contrary to state and federal precedent. Finding that the *Bram* Court itself, notwithstanding the absolutist character of its test, applied a totality of the circumstances approach, Justice RYAN observed:

> "*Bram* involved a defendant who gave a confession while in custody, alone and unrepresented by counsel. At no time were promises of leniency mentioned by his interrogator. Rather, the court looked at the circumstances of the interrogation, including the fact that he was forced to strip off his clothing, in finding the confession involuntary. Thus, *Bram* does not support the conclusion that a plea bargain in which a promise of leniency is made automatically makes the defendant's statement involuntary." *People v Jones, supra,* p 373.

Justice RYAN found subsequent Supreme Court decisions to be in accord:

"Even later cases which have approved of the *Bram* dictum have not adopted a per se approach.

"In *Malloy v Hogan* [378 US 1; 84 S Ct 1489; 12 L Ed 2d 653 (1964)], the Court applied the Fifth Amendment to the states via the Fourteenth Amendment and stated that *federal standards governed* whether the self-incrimination privilege was properly invoked or not. *Brady v United States,* 397 US 742; 90 S Ct 1463; 25 L Ed 2d 747 (1970), approved of *Bram's* formulation, *but* the Court specifically determined that a guilty plea made in order to avoid the possibility of the death penalty was not per se involuntary. Rather, voluntariness had to be determined by looking at all the circumstances." *People v Jones, supra,* p 373-374 (emphasis in *Jones).*

The federal appellate courts have adopted a similar interpretation of the *Bram* rule, holding that it should not be applied on a strict, per se basis. See, *e.g., United States v Springer,* 460 F2d 1344 (CA 7, 1972), *cert den* 409 US 873; 93 S Ct 205; 34 L Ed 2d 125 (1972); *United States v Ferrara,* 377 F2d 16 (CA 2, 1967), *cert den* 389 US 908; 88 S Ct 225; 19 L Ed 2d 225 (1967). It has been observed, rather, that "determinations of voluntariness are based upon an assessment of all of the circumstances and factors surrounding the occurrence when the statement is made". *United States v Grant,* 622 F2d 308, 316 (CA 8, 1980), citing *Schneckloth v Bustamonte,* 412 US 218; 93 S Ct 2041; 36 L Ed 2d 854 (1973); *Haynes v Washington,* 373 US 503; 83 S Ct 1336; 10 L Ed 2d 513 (1963); *Culombe v Connecticut,* 367 US 568; 81 S Ct 1860; 6 L Ed 2d 1037 (1961).

Michigan courts have consistently applied a totality of the circumstances test in reviewing a lower court's determination of voluntariness. See, *e.g., People v Paintman,* 412 Mich 518; 315 NW2d 418 (1982); *People v Robinson,* 386 Mich 551; 194

NW2d 709 (1972). This analysis, grounded in federal law, includes consideration of the following factors: 1) the duration and conditions of detention; 2) the manifest attitude of the police toward the accused; 3) the physical and mental state of the accused; and 4) diverse pressures which sap or sustain the accused's powers of resistance or self-control. *People v Allen,* 8 Mich App 408, 412; 154 NW2d 570 (1967), citing *Culombe v Connecticut, supra.*

We agree with Justice RYAN's opinion in *People v Jones* that to discard the totality of the circumstances test in favor of a per se application of the *Bram* language when a promise is arguably made to an accused would be contrary to both precedent and prudence. The flexible totality of the circumstances test "allows for judicial determinations of voluntariness in myriad situations without such decision making being hampered by rigid and potentially artificial restraints", *United States v Grant, supra,* p 316. It is the more enlightened approach, recognizing that a given inducement may have little or no effect on a sober, alert, and relaxed suspect, and yet may force a confession from a suspect who is intoxicated, threatened or sleep-deprived. The use of the *Bram* Court, in dicta, of language borrowed from 3 Russell on Crimes (6th ed), p 478, should not obfuscate the central issue of voluntariness—whether the suspect's statement was "the product of an essentially free and unconstrained choice" or the result of an overborne will. *Culombe v Connecticut, supra,* 367 US 602.

An examination of the totality of the circumstances surrounding defendant's confession in this case convinces us that his inculpatory statements were made voluntarily. Defendant was picked up

for questioning at his father's place of business by
Detectives Dwain Dennis and Kenneth Voet. He
was not placed under arrest. Upon arriving at the
sheriff's department, defendant was taken directly
to Dennis's office where the interview began imme-
diately. Both detectives were present during ques-
tioning. There was no dispute that prior to any
interrogation Dennis read defendant his *Miranda*[2]
rights from a printed card, nor is it disputed that
defendant signed a waiver of rights form. The
interview lasted approximately one hour.

Although defendant testified that he was not
threatened in any way, he indicated that he was
told he "had to sign" the waiver card, and that he
did so without reading it. Defendant testified that
he had consumed half a bottle of vodka prior to
being taken in for questioning and that he under-
stood nothing that transpired during the interview
because he was "scared". He did not remember
being advised of his constitutional rights. Both
detectives, however, stated that defendant ap-
peared to be sober, spoke clearly and articulately,
and acknowledged an understanding of his rights.

At one point during the interview, Dennis told
defendant that things would go a lot easier on him
if he would confess, or words to that effect. Accord-
ing to Dennis, he informed defendant that if he
believed defendant to be truthful, he would advise
the presentence investigator of the fact. Specifi-
cally, Dennis testified:

"*Q.* Other than indicating that things may go a little
easier on him or you would make your recommendation
to the presentence officer as to whether or not he was
truthful, with you, did you promise him anything else?

"*A.* I promised him nothing.

---

[2] *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694
(1966).

"*Q.* Did you inform him that you promised him nothing at any time?

"*A.* Yes, repeatedly."

Defendant testified that when Dennis informed him things would go easier if he confessed, defendant interpreted the statement as indicating that he would not be charged with a crime. In defendant's version of the events, Dennis had explained: "This is an old barn, an old building, and if you confess to it, we'll let you go home." When asked if Dennis had informed him that his cooperation would be made known to the presentence investigator, defendant could not recall such a statement.

The trial judge, who had an opportunity to observe the demeanor of the witnesses, resolved the testimonial conflicts in favor of the officers. When confronted with a conflict in the testimony, it is his duty to determine credibility of the witnesses and arrive at his decision of whom to believe, *People v Smith,* 124 Mich App 723; 335 NW2d 137 (1983), and where a determination of voluntariness depends upon such a judgment, deference will be given to the findings of the trial court, *People v Prast (On Rehearing),* 114 Mich App 469, 484; 319 NW2d 627 (1982). Here the trial judge found that defendant was "extremely conversant with the English language" and that he had fully understood the nature of his constitutional rights. The trial court did not find improper the statement by Dennis to defendant that his cooperation would be made known to the presentence investigator.

We begin our analysis with an assessment of the statements made by Officer Dennis to defendant. The statement to the effect that things would go easier for defendant if he confessed is innocuous; similar statements have been held not to consti-

tute improper promises of leniency. See, *e.g., People v Andersen,* 101 Cal App 3d 563; 161 Cal Rptr 707 (1980); *Paramore v State,* 229 So 2d 855 (Fla, 1969, *vacated on other grounds* 408 US 935; 92 S Ct 2857; 33 L Ed 2d 751 (1972). Dennis's other statement that he would advise presentence investigators that defendant had been cooperative and honest, if Dennis found that to be the case, constitutes a promise but not a promise of leniency. When the prosecutor inquired of Dennis what impact his recommendation would have, Dennis responded: "I have to believe it carries a certain amount of weight towards the sentencing". Dennis did not testify that he shared his opinion with defendant. According to Officer Voet, Dennis told defendant only that the presentence investigator would "have a look at it" and that it "would be weighed as to his sincerity and truthfulness". The entire discussion was very brief and the subject was not raised again during the course of the interrogation.

While not insensitive to the inherent tensions attending a police interrogation, we are constrained to believe that these are not such words as to cause a criminal suspect to blurt out a confession, absent extraordinary circumstances. It must be recalled that what is suspect are express or implied *promises of leniency.* Defendant was never assured that his cooperation would result in a more lenient sentence, and he could not have inferred such a promise in view of Dennis's repeated warnings that nothing was being promised.

The proposition that Dennis's statements should be considered *de minimis* in the balance by which we determine voluntariness finds support even in Justice KAVANAGH's opinion in *People v Jones, supra.* One of the extrajurisdictional cases cited in

that opinion as embracing the *Bram* test was described as follows:

"*Commonwealth v Meehan,* 377 Mass 522, —; 387 NE2d 527, 534 (1979), *cert dis as improvidently gtd* 445 US 39; 100 S Ct 1092; 63 L Ed 2d 185 (1980) ('An officer may suggest broadly that it would be "better" for a suspect to tell the truth, may indicate that the person's cooperation would be brought to the attention of the public officials or others involved, or may state in general terms that cooperation has been considered favorably by the courts in the past. What is prohibited, if a confession is to stand, is an assurance, express or implied, that it will aid the defense or result in a lesser sentence.') (Footnotes omitted.)" *People v Jones, supra,* pp 360-361, fn 3. See also *State v Williams,* 358 So 2d 1094 (Fla App, 1978); *State v Mullin,* 286 So 2d 36 (Fla App, 1973).

Somewhat similar facts were at issue in *People v Ewing (On Remand),* 102 Mich App 81; 300 NW2d 742 (1980):

"Defendant also argues that his incriminating statements were induced by an improper promise of leniency made to him by the investigating officer. *People v Pallister,* 14 Mich App 139; 165 NW2d 319 (1968). A review of the *Walker* hearing record discloses that the investigating officer told defendant that he would do what he could to help and that things would go easier for defendant if he would cooperate and tell the truth. He also testified that it was normal practice for the presentence investigator to ask the police about a defendant's cooperation, and so he told defendant that an accused's cooperation is normally taken into consideration by the trial court during sentencing. We agree with the trial court that defendant's statements were voluntary and were not induced by improper promises. *People v McGillen #1* [392 Mich 251; 220 NW2d 677 (1974)], *supra; People v Crawford* [89 Mich App 30; 279 NW2d 560 (1979)], *supra; People v Sparks* [82 Mich App

44; 266 NW2d 661 (1978)], *supra.*" *People v Ewing, supra,* pp 85-86.

The Michigan Supreme Court held defendant Ewing's application for leave to appeal in abeyance pending its decision in *People v Jones, supra. Ewing,* 414 Mich 852 (1982). On April 26, 1983, the Supreme Court issued an order denying the application. Because the *Ewing* Court did not explain how it reached its conclusion, the order is of little analytical benefit. The facts of *Ewing* are arguably more troublesome than those of the instant case, as the officer in *Ewing* told the defendant he would do what he could to help, and absent are the repeated warnings extant here that nothing was being promised. Even if the officer's conduct in *Ewing* constituted a promise of leniency, however, that alone would not automatically invalidate the confession. *State v Riley,* 19 Wash App 289; 576 P2d 1311 (1978); *Pontow v State,* 58 Wis 2d 135; 205 NW2d 775 (1973). The *Ewing* Court could fairly have found that, after a consideration of all the circumstances surrounding the confession, it was voluntarily made.

Despite the absence of improper promises to elicit defendant's confession, the totality of circumstances approach mandates that we examine other indicia of voluntariness to determine whether the officers' words were sufficient to overbear defendant's free will. See *Ladd v State,* 568 P2d 960 (Alas, 1977).

Questioning began immediately and lasted only one hour. The officers conducted themselves with civility and did not threaten defendant. Although defendant was only 17 at the time of the interrogation and had apparently had no prior experience as a criminal suspect, he was alert and responsive during the interview. Defendant was not under

arrest. The trial judge determined that defendant was given his *Miranda* rights and understood them. All other factors being favorable, we are unwilling to hold that defendant's youth, criminal inexperience, and understandable fear at the prospect of questioning concerning his involvement in a criminal offense served to magnify Dennis's relatively benign statements into conduct such as would overbear defendant's will.

Even were the absolutist approach to the application of the *Bram* rule applied, the result would not vary. The per se inquiry would require a finding of an express or implied promise of leniency and that the promise induced the confessions. Because no promise of leniency was made, the first part of the test would be dispositive. Moreover, finding that Dennis's statement induced the confession would be problematic. The dissenting opinion states: "Defendant himself testified that he confessed because he was afraid and because of the detectives' promises of leniency." This is somewhat misleading. The promise of leniency referred to by defendant was Dennis's alleged representation that, if he confessed, he would not be charged and could go home. The record indicates that no one, including defendant's own attorney, believed that Dennis had made such a statement. Defendant could not even recall that Dennis made the statement concerning the presentence investigator. Other record evidence, though conflicting, was resolved by the trial judge in favor of a finding that the confession was voluntary and not coerced.

Upon review of testimony presented both at the *Walker* hearing and the preliminary examination, we do not possess a definite and firm conviction that the trial court erred in finding defendant's statement properly admissible.

Affirmed.

R. B. BURNS, P.J., concurred.

MACKENZIE, J. *(dissenting).* The sole issue raised on appeal concerns the voluntariness of defendant's confession. This issue was presented to the trial judge in the course of a pretrial evidentiary hearing held pursuant to *People v Walker (On Rehearing),* 374 Mich 331; 132 NW2d 87 (1965). The trial judge held that defendant's confession was voluntary. This Court reviews such a holding by examining the whole record and making an independent determination of the ultimate issue of voluntariness. If, after such a review, we do not possess a definite and firm conviction that the trial judge erred, we will affirm. See *People v McGillen #1,* 392 Mich 251, 257; 220 NW2d 677 (1974).

Testimony at the *Walker* hearing revealed that defendant was questioned by Detective Dwain Dennis of the Ionia County Sheriff's Department and Detective Sergeant Kenneth Voet of the State Police. According to defendant, Detective Dennis told him that it would be easier for him if he confessed and that, if he would confess, he could go home. Defendant explained that he understood Detective Dennis to mean that he would not be charged with anything if he confessed.

Detective Dennis acknowledged that he had testified at the preliminary examination that he had told defendant that "things would go a lot easier on you if you'd just confess". Both Detective Dennis and Detective Sergeant Voet testified that those were not the exact words used. Detective Sergeant Voet testified that the word "confess" was not used; however, Detective Dennis testified that his preliminary examination testimony fairly

conveyed the thrust of what defendant was told. The detectives explained that they never told defendant that he would not be charged if he confessed. According to the detectives, they explained to defendant that they would be contacted by the presentence investigator for their recommendation, that their recommendation would be included in the presentence report and would carry some weight at sentencing, and that, if defendant told them what happened, a favorable recommendation could be made. If the detectives thought defendant lied to them, an unfavorable recommendation would be made.

The detectives' testimony shows that they made representations to defendant which were inconsistent with a well-settled principle of the law of sentencing. A sentence may not be based even in part on the defendant's refusal to admit guilt. *People v Earegood,* 383 Mich 82, 84-85; 173 NW2d 205 (1970); *People v Yennior,* 399 Mich 892 (1977), *reversing* 72 Mich App 35; 248 NW2d 680 (1976); *People v Grable,* 57 Mich App 184, 188-189; 225 NW2d 724 (1974); *People v Travis,* 85 Mich App 297, 303; 271 NW2d 208 (1978); *People v Stubbs,* 99 Mich App 643, 647; 298 NW2d 612 (1980); *People v Rabb,* 112 Mich App 430, 432; 316 NW2d 446 (1982); *People v Pottruff,* 116 Mich App 367, 378; 323 NW2d 402 (1982). Therefore, whether or not defendant confessed and whether or not the detectives thought any exculpatory statements made by defendant were truthful ought not to have carried any weight at sentencing.

In *Hopt v Utah,* 110 US 574, 584-585; 4 S Ct 202; 28 L Ed 262 (1884), the Court said:

"A confession, if freely and voluntarily made, is evidence of the most satisfactory character. * * *

\* \* \*

"But the presumption, upon which weight is given to such evidence, namely, that one who is innocent will not imperil his safety or prejudice his interests by an untrue statement, ceases when the confession appears to have been made, either in consequence of inducements of a temporal nature, held out by one in authority, touching the charge preferred, or because of a threat or promise by or in the presence of such person, which, operating upon the fears or hopes of the accused, in reference to the charge, deprive him of that freedom of will or self-control essential to make his confession voluntary within the meaning of the law."

The United States Supreme Court has held that the test of admissibility for confessions is whether the confession was made "freely, voluntarily, and without compulsion or inducement of any sort". *Wilson v United States,* 162 US 613, 623; 16 S Ct 895; 40 L Ed 1090 (1896); *Haynes v Washington,* 373 US 503, 513; 83 S Ct 1336; 10 L Ed 2d 513 (1963). A confession is involuntary if "obtained by any direct or implied promises, however slight". *Bram v United States,* 168 US 532, 542-543; 18 S Ct 183; 42 L Ed 568 (1897); *Shotwell Mfg Co v United States,* 371 US 341, 347; 83 S Ct 448; 9 L Ed 2d 357 (1963); *Malloy v Hogan,* 378 US 1, 7; 84 S Ct 1489; 12 L Ed 2d 653 (1964); *Brady v United States,* 397 US 742, 753; 90 S Ct 1463; 25 L Ed 2d 747 (1970); *Hutto v Ross,* 429 US 28, 30; 97 S Ct 202; 50 L Ed 2d 194 (1976). Michigan courts have long followed the same rule. *Flagg v People,* 40 Mich 706 (1879); *People v Wolcott,* 51 Mich 612; 17 NW 78 (1883); *People v Cleveland,* 251 Mich 542, 547; 232 NW 384 (1930); *People v Pallister,* 14 Mich App 139, 148; 165 NW2d 319 (1968). However, in *People v Ewing (On Remand),* 102 Mich App 81, 85-86; 300 NW2d 742 (1980), the Court held:

"A review of the *Walker* hearing record discloses that the investigating officer told defendant that he would do what he could to help and that things would go easier for defendant if he would cooperate and tell the truth. He also testified that it was normal practice for the presentence investigator to ask the police about a defendant's cooperation, and so he told defendant that an accused's cooperation is normally taken into consideration by the trial court during sentencing. We agree with the trial court that defendant's statements were voluntary and were not induced by improper promises."

The *Ewing* decision is not very persuasive because it contains no analysis of the large body of precedent dealing with this problem. Moreover, as has already been shown, to the extent that "cooperation" is used as a euphemism for "confession", such "cooperation" is not a proper sentencing consideration. The *Ewing* Court failed to take this into account when it held that the officer's promises to defendant were not improper.

Analysis of recent cases from other jurisdictions shows that confessions obtained by promises similar to those made here have been repeatedly held to be involuntary. See *McLallen v Wyrick,* 498 F Supp 137 (WD Mo, 1980) (defendant told that it would be better to make a statement than not to make one); *Womack v State,* 281 Ala 499; 205 So 2d 579 (1967) (defendant told that authorities would go lighter on him if he made a statement); *S B v State,* 614 P2d 786 (Alas, 1980) (officer indicated to defendant that a confession would lead to leniency); *People v Jimenez,* 21 Cal 3d 595; 147 Cal Rptr 172; 580 P2d 672 (1978) (officer told defendant that he would testify that defendant had talked about the case and that such testimony would cause the jury to be lenient in deciding whether to impose the death penalty); *Bradley v State,* 356 So 2d 849 (Fla App, 1978) (defendant told that inter-

rogating officer could get defendant a deal which would result in a lighter sentence); *Robinson v State,* 229 Ga 14; 189 SE2d 53 (1972) (defendant told that everybody asks how cooperative a suspect has been); *People v Tanser,* 75 Ill App 3d 482; 31 Ill Dec 414; 394 NE2d 616 (1979) (officers told defendant that they could only help him with his problem if he told them about it); *State v Tardiff,* 374 A2d 598 (Me, 1977) (defendant told that if he confessed he would be charged with one offense rather than three); *Hargis v Warden, Maryland Penitentiary,* 3 Md App 76; 237 A2d 807 (1968) (defendant told that a confession would help him in the eyes of the judge); *Commonwealth v Meehan,* 377 Mass 552; 387 NE2d 527 (1979) (defendant told that a confession would help his defense); *People v DeJesus,* 63 App Div 2d 148; 407 NYS2d 5 (1978) (defendant told of potential life sentence and that the only way to help himself was to disclose the identity of his accomplice); *State v Williams,* 33 NC App 624; 235 SE2d 869 (1977) (officer promised to testify that defendant talked to him and was cooperative); *Walker v State,* 626 SW2d 777 (Tex Crim App, 1982) (officers and district attorneys promised defendant that if he confessed he would not receive a sentence greater than ten years and charges against his mother would be dropped); *State v Persinger,* 386 SE2d 261 (W Va, 1982) (officers promised to give a favorable recommendation to the presentence investigator). See also 29 Am Jur 2d, Evidence, §§ 558-565, pp 617-624, and the cases discussed therein.

In most of the cases involving arguably analogous facts in which the confessions have been held to have been voluntary, the statements made to the defendants are distinguishable from those pre-

sented here. Confessions have been held to have
been voluntary where the interrogating officers
merely told defendant that authorities would be
informed of his cooperation, but where the officers
did not tell defendant that this would lead to
lenient treatment. *United States v Frazier,* 434
F2d 994 (CA 5, 1970); *United States v Springer,*
460 F2d 1344 (CA 7, 1972); *United States v Curtis,*
562 F2d 1153 (CA 9, 1977); *United States v Bal-
lard,* 586 F2d 1060 (CA 5, 1978); *Wallace v State,*
290 Ala 201; 275 So 2d 634 (1973); *State v Mullin,*
286 So 2d 36 (Fla App, 1973); *State v Williams,* 358
So 2d 1094 (Fla App, 1978); *Bova v State,* 392 So
2d 950 (Fla App, 1980); *Clayton v State,* 156 Ga
App 285; 274 SE2d 682 (1980); *State v Forrester,*
21 Wash App 855; 587 P2d 179 (1978). Often these
cases have involved an express statement by the
officers that no promises could be made. *Wallace v
State, supra; State v Mullin, supra; State v Wil-
liams, supra; Clayton v State, supra.* Confessions
have also been held to have been voluntary where
the officers merely told defendant that it would be
better to tell the truth, *Harvey v State,* 272 Ark
19; 611 SW2d 762 (1981); *State v Tillery,* 227 Kan
342; 606 P2d 1031 (1980); *State v Theriault,* 425
A2d 986 (Me, 1981), or where the officers merely
gave defendant accurate information about poten-
tial charges and penalties, *Turner v State,* 407
NE2d 235 (Ind, 1980).

Here, however, according to their own testi-
mony, the detectives told defendant that their
favorable or unfavorable recommendation to the
presentence investigator would make a difference
at sentencing. This was a promise of leniency, not
merely a promise to inform the authorities of
defendant's cooperation. According to the detec-
tives, they told defendant to tell them the truth.

However, when the detectives told defendant that the truth would lead to a favorable sentencing recommendation but that the detectives would make an unfavorable recommendation if they thought defendant lied, it was obvious that the detectives would only accept a confession as of the truth. Moreover, the information which, according to the detectives, they gave to defendant concerning the potential impact on sentencing of a confession was erroneous as a matter of law.

Even if the detectives' account of what transpired is true, the detectives made improper promises to defendant. We must still examine all the circumstances surrounding the confession and determine whether defendant's will was overborne. See *Ashdown v Utah,* 357 US 426; 78 S Ct 1354; 2 L Ed 2d 1443 (1958); *Haynes v Washington, supra,* and *United States v Ferrara,* 377 F2d 16 (CA 2, 1967). In *Hopt v Utah, supra,* the Court recognized that promises of leniency can deprive a defendant of the freedom of will necessary for a voluntary confession. The test stated in *Bram v United States, supra,* and subsequent cases also recognized that promises render a confession involuntary only if the confession is obtained by the promises.

The prosecution places considerable reliance on defendant's signing of a form waiving his rights under *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966). The prosecution claims that in *North Carolina v Butler,* 441 US 369, 373; 99 S Ct 1755; 60 L Ed 2d 286 (1979), the Court stated that the execution of such a waiver is usually strong proof of voluntariness. Actually, the *Butler* Court stated merely that the execution of such a waiver is usually strong proof of a voluntary waiver of *Miranda* rights. Whether defendant's confession was voluntary is a different ques-

tion than whether defendant's waiver of his *Miranda* rights was voluntary. See *Mincey v Arizona,* 437 US 385, 397-398; 98 S Ct 2408; 57 L Ed 2d 290 (1978).

At the time of his confession, this defendant was 17 years old and had not previously been arrested or interrogated by the police. The entire interrogation session took only slightly more than an hour and defendant apparently began his statement shortly after the promises at issue here were made. The promises at issue were obviously calculated by the detectives to induce a confession. Defendant himself testified that he confessed because he was afraid and because of the detectives' promises of leniency. My review of the record leaves me with the definite and firm conviction that defendant's will was overborne and that the confession was obtained by the detectives' promises. In reaching this conclusion, I have followed the trial court by resolving all credibility conflicts in favor of the detectives. Defendant's confession was involuntary.

I would reverse and remand.