■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DOUGLAS WILLIAMSON, Appellant. [667 NYS2d 114] —Cardona, P. J. Appeal from a judgment of the County Court of Tompkins County (Barrett, J.), rendered May 10, 1996, upon a verdict convicting defendant of the crimes of sodomy in the third degree and attempted sodomy in the third degree.

On September 2, 1994, acting on a sexual assault complaint by a 16-year-old male resident of the Town of Groton, Tompkins County, Deputy Sheriff David Buck went to defendant's residence and asked him if he would accompany him to the police station to discuss "a matter". Defendant agreed and at the station met Lieutenant Robert Churchill. During the ensuing 45 minutes, defendant first denied and then admitted performing an act of oral sodomy upon the complainant. Defendant was indicted and charged with the crimes of sodomy in the third degree and attempted sodomy in the third degree. Following a *Huntley* hearing, County Court denied defendant's suppression motion and his written statement was admitted at his trial. Defendant was convicted and sentenced to concurrent prison terms of 1$\frac{1}{3}$ to 4 years for the crime of sodomy in the third degree and one year for the crime of attempted sodomy in the third degree. Defendant appeals.

Defendant contends that County Court erred in failing to suppress his statement as involuntarily made. He argues that by promising to recommend release on his own recognizance following arraignment, the police played upon his fear of going to jail and, as a result, overbore his will causing him to falsely incriminate himself (*see*, CPL 60.45 [2] [b] [i]). There is proof in this record that defendant voluntarily accompanied Buck to the police station. Furthermore, the record indicates that he was administered his *Miranda* rights and signed a written acknowledgment waiving them. During the initial 30-minute interview defendant denied the allegations and also told the officers that he did not want to go to jail. Churchill told defendant that if he cooperated by telling the truth, he would recommend his release on his own recognizance after arraignment. Eventually, defendant admitted possible contact with the complainant but indicated that he had been drinking and could not remember. At that point, Churchill told defendant that he did not believe him and did not want to talk with him any further before leaving the room. Buck brought defendant out of the room and had him sit on a bench handcuffed to a railing while processing defendant's paperwork. Later, Churchill brought defendant a cup of coffee and saw tears in his eyes. He asked him if he wanted to talk further and defendant nodded in the affirmative. Churchill removed the handcuffs and after approximately 10 more minutes of conversation, defendant signed an incriminating statement. Thereafter, defendant was arraigned on felony charges in local criminal court and, upon the recommendation of Churchill, released on his own recognizance.

Turning to the merits, we note that the determination of whether a confession is involuntary depends upon the "totality of the circumstances" (*People v Anderson*, 42 NY2d 35, 38). Here, the entire interview lasted less than an hour. Thus, "[w]e do not have the long hours of questioning and other techniques which, when viewed as a whole, [could be] characterized as an 'emotional battering' that could overcome * * * defendant's will" (*People v Perry*, 77 AD2d 269, 272; *see, People v Bay*, 76 AD2d 592, 600, *appeal dismissed* 54 NY2d 808). Although defendant testified that his alleged fear of going to jail emanated from past experiences with heart problems while incarcerated, there was no evidence that he communicated these concerns to Churchill or that Churchill was otherwise aware that defendant was so vulnerable or susceptible to the offer of being released on his own recognizance that he would falsely incriminate himself (*see, People v Baird*, 167 AD2d 693, *lv denied* 77 NY2d 903; *People v Taber*, 115 AD2d 126, *lv denied* 67 NY2d 657).

In any event, we view Churchill's statement as one which would not create a substantial risk that defendant would falsely incriminate himself (*see*, CPL 60.45 [2] [b] [i]; *see, e.g., People v Johnson*, 177 AD2d 791 [promise to guarantee the defendant's safety in prison]; *People v Burdick*, 168 AD2d 835, *lv denied* 77 NY2d 876 [promise not to arrest the defendant on the day of his confession]; *People v Taber, supra* [promise to get the defendant medical help]; *compare, People v Keene*, 148 AD2d 977 [promise not to jail the defendant's wife who was 7½ months pregnant and complaining of labor pains]). Significantly, Churchill gave no assurance to defendant that he would not be prosecuted or that he would receive lenient treatment (*see, People v Richardson*, 202 AD2d 958, *lv denied* 83 NY2d 914; *People v Donson*, 147 AD2d 815, *lv denied* 73 NY2d 1014). Finally, we note defendant's extensive prior experience with the criminal justice system (*see, People v Sobchik*, 228 AD2d 800, 802; *People v Miller*, 220 AD2d 902, 904, *lv denied* 88 NY2d 882). Based upon the totality of the circumstances, we conclude that the People proved the voluntariness of defendant's statement beyond a reasonable doubt (*see, People v Anderson*, 42 NY2d 35, 38, *supra*; *People v Gibson*, 241 AD2d 772, 774). Accordingly, the suppression motion was properly denied.

Crew III, White, Yesawich Jr. and Carpinello, JJ., concur. Ordered that the judgment is affirmed.