■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CHIQUITA M. GUILLERY, Appellant. [701 NYS2d 150] —Mugglin, J. Appeal from a judgment of the County Court of Warren County (Moynihan, Jr., J.), rendered December 11, 1996, upon a verdict convicting defendant of the crimes of sodomy in the first degree and sexual abuse in the first degree.

Defendant's principal contentions are that her prearrest statement was involuntary and should have been suppressed, that the verdict was against the weight of the evidence, that she should not have been sentenced to consecutive terms as a second felony offender and that the sentence was harsh and excessive.

With respect to the first contention, it is now settled law that "the voluntariness of a statement is generally 'a question of fact to be determined from the totality of the circumstances'" (*People v Miller*, 244 AD2d 828, quoting *Matter of James OO.*, 234 AD2d 822, 823, *lv denied* 89 NY2d 812; *see, People v Williamson*, 245 AD2d 966, 967, *lv denied* 91 NY2d 946). Once the prosecution has established the legality of police conduct and the defendant's waiver of rights, the burden of proof at the suppression hearing shifts to the defendant (*see, People v Love*, 57 NY2d 998, 999). In general, "the factual findings of the suppression court are entitled to great weight and will not be set aside unless clearly erroneous" (*People v Gagliardi*, 232 AD2d 879, 880).

The transcript of the suppression hearing reveals that defendant voluntarily accompanied Parole Officer Joseph Greco and Detective Sergeant Lloyd Swartz to the City of Glens Falls Police Station in Warren County. After a short preliminary discussion, she was advised by Swartz that he wanted to read her the *Miranda* warnings. In response, defendant replied that she was familiar with them from a previous arrest. Nevertheless, Swartz not only read the formal language from the card, but he and Greco explained in simpler terms the meaning of each formal statement. Defendant, either by answering "yes" or nodding her head affirmatively, indicated that she understood each part of the *Miranda* warnings given her. In addi-

tion, she signed the card. She then made inculpatory oral statements which Swartz typed, and after assuring himself that defendant could read the statement, Swartz gave it to her to read and sign, which she did. Both officers denied the use of physical restraints, threats or force. The preparation of the typed statement and the questioning lasted no more than one hour.

At the suppression hearing, defendant's main contention was that her subnormal intelligence rendered it impossible for her to comprehend the *Miranda* warnings. "An effective waiver of *Miranda* rights may be made by an accused of subnormal intelligence so long as it is established that he or she understood the immediate meaning of the warnings" (*People v Williams*, 62 NY2d 285, 287). Psychologist Richard Hamill testified as an expert witness that his examination and testing of defendant left him with a clear impression that she was fully able to understand the import of the *Miranda* warnings. While a second psychologist, Jeffrey Fox, expressed a contrary opinion, deference is generally paid to County Court's resolution of conflicts in expert testimony (*see, People v Rogers [Rodgers]*, 247 AD2d 765, 766, *lvs denied* 91 NY2d 976, 977; *People v King*, 234 AD2d 923, 924, *lv denied* 89 NY2d 1012). Defendant also testified, enabling County Court to make its own evaluation of the degree of her mental impairment.

Under these circumstances, the admonition that "[i]n dealing with a person of subnormal intelligence, close scrutiny must be made of the circumstances of the asserted waiver" (*People v Williams, supra*, at 289) was adhered to by County Court, rendering its denial of defendant's suppression motion entirely proper (*see, People v Anderson*, 42 NY2d 35, 38; *People v Gibson*, 241 AD2d 772, 774, *lv denied* 91 NY2d 873).

The standard for review of defendant's second contention, i.e., that the verdict is against the weight of the evidence, is as follows: "If based on all the credible evidence a different finding would not have been unreasonable, then the appellate court must, like the trier of fact below, 'weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony' * * * If it appears that the trier of fact has failed to give the evidence the weight it should be accorded, then the appellate court may set aside the verdict (CPL 470.20 [2])." (*People v Bleakley*, 69 NY2d 490, 495 [citation omitted].) In making this determination, this Court must view the evidence adduced at trial in a neutral light (*see, People v Waite*, 243 AD2d 820, 821, *lv denied* 91 NY2d 882, 931).

At trial, the People introduced the statement of defendant's husband that defendant had observed him rubbing the vagina of defendant's then-five-week-old daughter,* that defendant then told him to insert his finger into the baby's vagina, which he did, and that he then observed defendant lick the baby's vagina for about one minute. Also in evidence was defendant's own statement to the police in which she admitted this conduct. The People also presented the testimony of Nelson Miller, the gynecologist who examined the baby the day after defendant's arrest, who testified that the baby had been the victim of vaginal penetration by an object large enough to stretch her hymen but not tear it. He opined that the object in question could have been a small finger or a human tongue. He further testified that the baby's hymen was abnormal for her age, and that this abnormality could not be the result of either a congenital defect or illness and could not have been self-inflicted.

Defendant presented three witnesses who testified that they were at defendant's apartment on the day in question and that her husband did not appear there on that date. On this record, we conclude that a different finding would be unreasonable and there is no basis upon which to disturb the jury verdict.

We next address defendant's contentions concerning her consecutive, determinate prison sentences of 15 and 6 years. Defendant asserts that she should not have been sentenced as a second felony offender because her plea in her prior case was not knowing or voluntary. A review of the transcript of the plea allocution in that proceeding does not support this contention. Defendant also argues that her prior conviction is invalid because the sentencing court failed to inform her at the time of her guilty plea of the effect it would have on prison sentences imposed after future criminal convictions. There is no merit to this contention (*see, People v Hannon,* 209 AD2d 319, 320-321, *lv denied* 85 NY2d 862). Moreover, County Court's imposition of consecutive sentences for these separate and distinct criminal acts was entirely appropriate (*see, People v Brown,* 80 NY2d 361; *People v Robbins,* 118 AD2d 820, *lv denied* 67 NY2d 949; *People v Williams,* 114 AD2d 683; *see also,* Penal Law § 70.25 [2]). In addition, given defendant's prior convictions of three counts of sexual abuse in the first degree arising out of sexual contact with three children of a social acquaintance, the admitted abuse of her own children, her lack of insight as to the harm caused by her actions and the high probability that she will repeat her criminal activity with children if given the opportunity, there was no abuse of discretion on the part of the

---

* Defendant's husband is not the father of this child.

sentencing court and no extraordinary circumstances warranting modification of her sentence (*see generally*, *People v Teed*, 250 AD2d 934, *lv denied* 92 NY2d 906; *People v Jarvis*, 233 AD2d 632, 633, *lv denied* 89 NY2d 943).

We have examined defendant's remaining contentions and find them to be lacking in merit.

Cardona, P. J., Mikoll, Crew III and Yesawich Jr., JJ., concur. Ordered that the judgment is affirmed.