OPINION OF THE COURT
Larry M. Himelein, J.
Introduction
Defendant, who has been indicted for vehicular manslaughter, driving while intoxicated (DWI), and related offenses, has moved to suppress statements she made to the police, a photographic identification of her, and evidence of the alcohol content of her blood. A hearing was held before this court on October 3, 2001. Timothy Cashimere and Michael Vitello of the Olean Police Department, Jeanne Jackson, John Ensell and John Probst of the State Police, Thomas Graves, a respiratory therapist at Olean General Hospital, and Amy Foster, a bartender at Randy’s Up the River, were all called as witnesses. The parties have also submitted memoranda. The court generally credits the testimony and makes the following findings of fact and conclusions of law.
Findings of Fact
At approximately 9:00 p.m. on December 12, 1999, a car traveling on the River Road in the Town of Olean sheared a *100 telephone pole and plunged into the Allegany River. Officer Cashimere was first on the scene and observed defendant partially in the water and partially on the bank and another woman floating face down in the river. Sergeant Vitello arrived at nearly the same time and Cashimere helped Vitello down the bank and into the water to retrieve the woman in the river. With much difficulty, they were able to get the woman out of the water and onto the bank where emergency personnel began to work on her. Defendant, who had been yelling profanities, was ultimately brought out of the water and up the bank on a backboard. She told the officers, in response to their questions, that no one else was in the vehicle.
Investigator Jackson followed the ambulance to the hospital, called in the license plate of the vehicle and called the owner of the vehicle who told Jackson that his son, Jonathan Teuscher, had the car. Jackson then spoke to defendant who told Jackson that Jonathan had been in the car earlier but had stayed at Randy’s. Jackson then sent other officers to try to locate Jonathan. Several days later, his body was found in the river.
Investigator Jackson testified that defendant had the odor of alcohol about her and also told Jackson that she had been driving the vehicle. However, Jackson did not arrest defendant but instead read defendant her DWI warnings, omitting only the portion that tells a suspect they are under arrest for DWI. Although defendant was belligerent with hospital personnel, she was cooperative with Investigator Jackson. Jackson reiterated and emphasized at the hearing that defendant was not under arrest when she was asked to give blood. The blood was drawn by Mr. Graves, an advanced emergency medical technician. According to Graves, defendant made no protest to the drawing of the blood. However, for reasons that are not entirely clear, Graves was able to obtain only one tube for a sample rather than the two he would normally have drawn.
The following day, at approximately 11:30 a.m., Investigator Probst interviewed defendant at the Erie County Medical Center (ECMC), where defendant had been transferred the night before. Defendant told Investigator Probst that the previous day she and Jonathan had been studying, drank some beer in the afternoon and went to her father’s home for money to buy index cards. They then surprised her mother by picking her up at the bus stop. At that time, Jonathan was driving, defendant was riding in front and her mother, the deceased, was riding in the rear. This interview ended when defendant’s aunt came to visit.
*101 Amy Foster was tending bar at Randy’s on December 12, 1999. Between 7:30 and 8:00 p.m., a young couple came in and the female ordered a draft beer and paid for it. Foster spoke to the couple for a “couple minutes” and then went back to the kitchen. When Ms. Foster returned to the bar, the couple had left. On December 16th, Ms. Foster identified a single photograph of defendant, shown to her by Investigator Jackson, as the woman who had been in the bar the night of the accident.
Conclusions of Law
A.
Defendant moved to suppress her statements to the police, the identification by Amy Foster, and the results of the analysis of her blood. Defendant alleged that the statements were involuntary and made without the proper warnings. She also alleged that she was suffering from a severe diabetic condition and other injuries that affected her mental abilities. With respect to the identification, defendant alleged that it was suggestive and tainted because only defendant’s photograph was shown to Ms. Foster.
The People opposed the statement and identification hearings on the grounds that the moving papers were “insufficient in law and fact” to warrant a hearing and further, that there was no factual showing of an entitlement to a hearing. However, CPL 710.60 (3) (b) provides that no factual allegations are necessary to support a motion to suppress a statement or an identification, although defendant clearly made a number of factual claims. Notably, the People’s response alleges no facts in opposition to those asserted by defendant (see, People v Gruden, 42 NY2d 214).
Concerning the motion to suppress evidence of the analysis of defendant’s blood, defendant’s allegations are clearly on the thin side. All that is asserted is that blood was taken from defendant and that it “may have been illegally obtained without the proper warning or under illegal circumstances.” The People’s response similarly alleges no facts relating to the drawing of defendant’s blood but merely contends that defendant’s papers are insufficient to justify a hearing. That contention was also made at the start of the hearing and in the People’s posthearing memorandum.
Even if a defendant’s factual allegations are insufficient, the court is not obligated to deny a suppression motion. CPL 710.60 (3) provides only that the court may summarily deny the mo *102 tion if the factual claims are insufficient to support suppression of the evidence. Moreover, where a Huntley or Wade hearing has been directed and a Mapp motion involves the same facts and witnesses, the Court of Appeals instructs that the better procedure may be to hold a Mapp hearing at the same time, despite any perceived pleading deficiencies (see, People v Mendoza, 82 NY2d 415, 429).
For a number of reasons, this court declines to summarily deny the motion to suppress the blood test results. While defendant’s allegations are sparse, there is a claim that blood was drawn without a proper warning. Further, the circumstances surrounding the accident might have made it difficult to make factual assertions. Defendant had been involved in a fatal motor vehicle accident, had been partially submerged in the freezing waters of the Allegany River, was allegedly intoxicated and had blood drawn only after being seriously injured and taken by ambulance to the hospital. Additionally, Huntley-Wade hearings had been directed and it was appropriate to conduct a Mapp hearing that involved the same incident and the same witnesses. Finally, the People made no factual contentions of their own.
B.
At the scene of the accident, the officers were involved in rescue efforts and defendant simply screamed obscenities. At that time, defendant was not in custody (People v Yukl, 25 NY2d 585, cert denied 400 US 851). At Olean General Hospital, although a reasonable person might well believe she was in custody because of Investigator Jackson’s implication that defendant had been arrested, Jackson was attempting to find out what had occurred with respect to the accident and ascertain if anyone else was injured. Under the circumstances, Miranda warnings were not required (People v Velasquez, 246 AD2d 448; People v Huffman, 41 NY2d 29). At ECMC, the questioning was brief, investigatory and ended at defendant’s request when she had a visitor (see, People v Sirmons, 239 AD2d 446). Thus, none of the statements defendant made are inadmissible and the motion to suppress them is denied.
With respect to the identification, showing a person a single photograph is clearly suggestive. Nonetheless, Ms. Foster spent several minutes talking to defendant in the bar and has an independent source for her identification of defendant at trial (see, People v Smith, 168 AD2d 924, lv denied 77 NY2d 911). Accordingly, the motion to bar Ms. Foster from identifying defendant in court is also denied.
*103 C.
Defendant contends that the evidence of the alcohol content of her blood should be suppressed for two reasons: (1) the blood was drawn at the direction of a nurse rather than a physician, and (2) defendant’s consent to draw blood was not valid because she was threatened with the loss of her driving privileges, without having been arrested, in order to obtain her consent.
The People argue that the emergency room physician directed the drawing of the blood and defendant validly consented to having it drawn. The People also accuse defendant of mischaracterizing the testimony in claiming that Graves was not authorized by statute to draw the blood. However, defendant has made no claim that Graves does not qualify as an advanced EMT under Vehicle and Traffic Law § 1194 (4) (a) (1) (ii). Rather, defendant asserts only that Graves did not draw blood under the supervision and direction of a physician. Instead, defendant claims that Graves was supervised and directed by a nurse.
The court notes that the People’s arguments on this point are contradictory. The People, realizing that Vehicle and Traffic Law § 1194 requires an arrest, therefore contend that the blood was not drawn pursuant to that section. Nonetheless, the People claim that, pursuant to that very section, the blood was drawn at the direction of a physician.
In People v Moser (70 NY2d 476), the Court of Appeals held that the personal presence and supervision by a physician of a technician who drew a blood sample was not required by Vehicle and Traffic Law § 1194. The Court found that the supervision requirements were satisfied by the physician’s authorization of the test (id.). Significantly, however, the physician in that case testified that he directed and supervised all activities in the emergency room and had authorized the drawing of the blood.
The Fourth Department has held that authorization by a registered nurse who did not personally observe the sample being taken is not in compliance with the statute (People v Ebner, 195 AD2d 1006). Similarly, in People v Olmstead (233 AD2d 837), the blood was drawn by a medical laboratory technician at the direction of a registered nurse, rather than a physician, also resulting in the suppression of the blood alcohol results (see also, People v Pickard, 180 Misc 2d 942, lv denied 94 NY2d 865; People v Gertz, 189 Misc 2d 315).
In this case, the physician who allegedly authorized the test did not testify. Although Mr. Graves testified that he drew the *104 blood at Dr. Prumbs’ direction, this was much more of a conclusion than a fact (i.e., “Q: Were you acting under Dr. Prumbs’ supervision and direction in drawing the blood? A: Yes”). Graves testified that he did not recall if Dr. Prumbs was present in the emergency room when Graves drew blood from defendant but nonetheless claimed, without any fact-specific testimony, that he was acting under Dr. Prumbs’ direction and control. He also said that he thought Dr. Prumbs might have been looking for an “aceto ácidos problem” in requesting the blood, but went on to say that the doctor did not speak directly to him and that the nurses told him that the doctor wanted blood gas drawn. He also said that the order to draw the blood would have gone through the nursing staff but no nurse testified to a physician giving such an order. He further said that initially he was drawing blood for defendant’s treatment at the hospital and had an “impression” that a nurse told him he could “get it all.” While the People point to other testimony (usually a response to a leading question), based on the entire testimony, the court cannot conclude that the People established that a physician authorized a blood draw to determine the alcohol content of defendant’s blood (People v Ebner, supra; People v Olmstead, supra; People v Pickard, supra; People v Gertz, supra).
However, the court does not believe that conclusion to be dis-positive on the issue of the admissibility of the blood test results. If the blood had been drawn pursuant to Vehicle and Traffic Law § 1194 and the draw was not authorized by a physician, the results would have to be suppressed. However, the People concede that the blood was not drawn pursuant to that section and they rely instead on general principles of consent to support their contention that the blood test results are admissible. Thus, the issue becomes whether defendant validly consented to give blood, not whether a physician authorized the drawing of the blood.
With respect to the issue of consent, the People repeatedly point to the lack of any evidence offered by defendant in support of her claim that she did not consent to give blood. However, when a suppression hearing is held, the People have the initial burden of going forward to demonstrate the legality of the police conduct in the first instance (People v Malinsky, 15 NY2d 86; People v Whitehurst, 25 NY2d 389; People v Lopez, 206 AD2d 894, lv denied 84 NY2d 937; People v De Frain, 204 AD2d 1002). Once this burden is met, the ultimate burden of proof rests on the defendant (People v Whitehurst, supra; People *105 v Guillery, 267 AD2d 781, lv denied 94 NY2d 920). When the People rely on consent, however, “the burden of proof rests heavily upon the People to establish the voluntariness of that waiver of a constitutional right” (People v Whitehurst, supra, 25 NY2d at 391; see also, People v Gonzalez, 39 NY2d 122; People v Zimmerman, 101 AD2d 294).
The court rejects defendant’s claim that consent must be established beyond a reasonable doubt. People v McNeeley (77 AD2d 205), cited in support of that assertion, says only that the prosecution must prove by clear and convincing evidence that a consent was unequivocally, voluntarily and freely given by a suspect (see also, People v Gonzalez, supra; Schneckloth v Bustamante, 412 US 218; People v Kuhn, 33 NY2d 203).
Defendant was seriously injured in the accident, suffering a broken ankle, a broken femur and a broken arm. She also had glass in her hair and blood and abrasions on her head and she is diabetic. Standing alone, however, those injuries and conditions would not vitiate her consent to give blood pursuant to Vehicle and Traffic Law § 1194 (see, People v Verdile, 119 AD2d 891; People v Bowen, 229 AD2d 954, lv denied 88 NY2d 1019; People v Delosh, 195 AD2d 769, lv denied 82 NY2d 753; People v Osburn, 155 AD2d 926, lv denied 75 NY2d 816).
However, Vehicle and Traffic Law § 1194 is an implied consent statute; anyone who operates a vehicle in New York is deemed to consent to be tested for alcohol or drugs when certain criteria are present. The People concededly are not relying on Vehicle and Traffic Law § 1194; their contention is that defendant, who was not under arrest, nonetheless consented to give blood and that issue therefore must be resolved outside the parameters of the Vehicle and Traffic Law.
Consent must be ascertained from the totality of the circumstances surrounding the alleged consent (People v Gonzalez, supra). However, consent that is the product of an improper police inquiry is not a valid consent (People v Irizarry, 79 NY2d 890). Further, “ [v] ohmtariness is incompatible with official coercion, actual or implicit, overt or subtle” (People v Gonzalez, supra, 39 NY2d at 128).
Here, the purported consenter was a woman in her early 20’s who suffered serious injuries in the accident in which her mother and her friend were killed. Shortly after arriving at the hospital, where she was “very upset” and crying, according to the man who drew her blood, she was told, incorrectly, that if she did not give blood, her license or privilege to operate a vehicle would be revoked and her refusal to give blood could be *106 used against her at a trial. Further, although she had not been arrested, the warnings given to her clearly implied, at least twice, that she had in fact been arrested. Under the circumstances, the court believes that defendant’s purported consent to give blood was simply a “[submission to authority” (see, People v Gonzalez, supra, 39 NY2d at 129; People v Cioffi, 55 AD2d 682).
The People attempt to demonstrate that there was no coercion here by referencing cases where the police threatened certain consequences if a defendant did not consent to a search (People v LaDuke, 206 AD2d 859; People v Young, 197 AD2d 874, lv denied 82 NY2d 854). However, the difference is evident; in those cases, the police threatened the defendant with consequences that were lawful. Here, had defendant refused to give blood, she would not have lost her privilege to operate nor could the refusal have been used against her because she had not been arrested.
The court confesses its discomfort with this result. Had defendant either been placed under arrest or been given an alcosensor test, the ensuing blood test would be admissible (Vehicle and Traffic Law § 1194 [2] [a] [1], [2]). Similarly, had defendant simply been asked to give blood without inaccurately threatening legal reprecussions, the results would also be admissible (People v Osburn, supra).
Nonetheless, consent cannot be voluntary when the law or the consequences are misrepresented in order to conduct a search (see, People v Bezer, NYLJ, Nov. 8, 1991, at 25, col 3; People v Resinger, NYLJ, May 12, 1992, at 27, col 1). In both of these cases, the court suppressed the results of the blood test based on a misrepresentation made to induce consent.
In Bezer, the warnings were read to the defendant more than two hours after his arrest. While the two-hour limit would not apply where a defendant consented to take the test, the consequences of a refusal were no longer possible. Thus, consent induced by misrepresenting the consequences of refusing to take the test was not a valid consent. In Resinger (at 27, col 1), the court followed Bezer, holding that after two hours had passed, the test results were admissible only if the People could prove that consent was “knowing, voluntary, and freely given after administration of warnings that accurately reflected the law [emphasis supplied].” Similarly, in People v Driscoll (87 AD2d 996), the Fourth Department found a consent obtained by an improper threat of arrest to be invalid. In People v Cosby (104 AD2d 1000), a statement made after an improper Mi *107 randa warning was also suppressed. People v Dillin (150 Misc 2d 311) and People v Hochheimer (119 Misc 2d 344), cited by the District Attorney, both involved arrested defendants and held only that the statutorily mandated warnings are not unconstitutionally coercive.
Because the law and the consequences were misrepresented to defendant, the People failed to meet their burden of demonstrating the legality of the police conduct in the first instance. Because of that failure, the burden never shifted to defendant to overcome the People’s proof.
Conclusion
The court declines the People’s invitation to deny defendant’s motion to suppress the blood alcohol results for the claimed lack of factual allegations. The motion to suppress those results is granted. The motion to suppress the statements made by defendant is denied. The motion to suppress the identification testimony is also denied.