■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ALFRED MARX, Appellant. [759 NYS2d 251] —Spain, J. Appeal from a judgment of the Supreme Court (Lamont, J.), rendered August 5, 1998 in Albany County, upon a verdict convicting defendant of the crime of sodomy in the first degree.

Defendant was convicted, following a jury trial, of first degree sodomy for his conduct on the evening of June 19, 1997, at age 23, in subjecting a three-year-old child to deviate sexual intercourse, which occurred while he and the child were at a highway service area sitting in a vehicle waiting for the child's mother—defendant's next door neighbor—to return (*see* Penal Law § 130.00 [2]; § 130.50 [3]). At trial, an eyewitness recounted observing this conduct from an adjacent vehicle, immediately alerting the child's mother, who was conversing nearby, and calling 911. Also admitted were defendant's oral and written statements to police in which he essentially admit-

ted the conduct, but contended that it was initiated by the child. Sentenced to 5½ to 11 years' imprisonment, defendant appeals raising the sole unpersuasive claim that, due to his limited intellectual abilities, his waiver of *Miranda* warnings was not knowing, intelligent or voluntary and, thus, his motion to suppress his statements to police should have been granted.

At the *Huntley* hearing a State Police sergeant testified that, in response to a radio call regarding a possible sexual abuse, he went to the address of the child's family; when the vehicle occupied by defendant, the child and his mother arrived, the sergeant inquired of defendant—who was sitting in the vehicle passenger seat—what he had been doing, where he was coming from, who he had been with and his activities at the service area. Defendant, in the presence of other officers, basically confirmed having waited in the car with the child, but admitted no wrongdoing. He was not accused of anything and never objected to the nonaccusatory questions. We find that the testimony supports Supreme Court's factual conclusion that the questioning which produced defendant's first oral statement occurred in a noncustodial setting, was entirely investigatory in nature and no *Miranda* warnings were required (*see People v Centano,* 76 NY2d 837 [1990]; *People v Yukl,* 25 NY2d 585, 589 [1969], *cert denied* 400 US 851 [1970]; *People v Warren,* 300 AD2d 692, 693 [2002]).

After asking defendant to wait by the car, the sergeant went inside and spoke to the child's mother, who had not observed the incident, and the child, who confirmed that there had been sexual contact. The sergeant then went outside and engaged in general conversation with defendant, who was not arrested or restrained, until a State Police investigator arrived and defendant agreed to accompany him to the police barracks. Upon arriving around 9:30 P.M., defendant was placed alone in an interview room and given a soda, the investigator left to make some calls and returned, reading defendant *Miranda* warnings; defendant stated that he understood and agreed to talk, thereafter making a second oral statement in which he admitted the incident, but portrayed it as initiated by the child. Defendant then agreed to give a written statement, and the investigator transcribed defendant's narrative recount and read it aloud to defendant, who signed it at just after midnight.

We find that the testimony adduced at the hearing fully supports Supreme Court's findings that defendant received *Miranda* warnings prior to the investigator's custodial interrogation, which defendant validly and voluntarily waived (*see People v Bolarinwa,* 258 AD2d 827, 829 [1999], *lv denied* 93

NY2d 1014 [1999]. Defendant never requested access to his family or an attorney, the questioning was not unduly long or in any manner coercive and defendant was cooperative. With regard to defendant's claims that, due to intellectual disabilities, he was incapable of understanding or waiving his rights as delineated by *Miranda*—rendering his statements involuntary—no proof was adduced at the suppression hearing to support that conclusion or even addressing the extent of his mental disability or the results of IQ or other tests (*cf. People v Williams,* 62 NY2d 285, 288 [1984]; *People v Ferguson,* 285 AD2d 901, 902 [2001], *lv denied* 96 NY2d 939 [2001].

In any event, "[a]n effective waiver of *Miranda* rights may be made by an accused of subnormal intelligence so long as it is established that he or she understood the immediate meaning of the warnings" (*People v Williams, supra* at 286). "It is not required that a defendant understand how a statement will be used in later proceedings" (*People v Comfort,* 293 AD2d 822, 823 [2002], *lv denied* 98 NY2d 674 [2002] [citation omitted]) or the various implications of waiving *Miranda* rights (*see People v Williams, supra* at 290). Rather, the inquiry focuses on defendant's ability "to grasp the basic concepts that he could refuse to talk to the investigator or that he could ask to speak to a lawyer" (*People v Ferguson, supra* at 902) and that any statement might be used to his disadvantage (*see People v Williams, supra* at 289). However, defendant's impaired intelligence is but one factor to be considered in the totality of circumstances voluntariness analysis where, as here, there is no evidence of mental retardation " 'so great as to render the accused completely incapable of understanding the meaning and effect of [the] confession' " (*id.* at 289 [citations omitted]).

The officers' unrefuted hearing testimony established that while defendant may not have grasped the seriousness of the incident, he was calm and appeared to understand what was going on; he was not unusually anxious, answered questions with ease and did not appear mentally impaired, and no evidence suggestive of a lack of comprehension or voluntariness was introduced. Thus, there is no basis in the record to disturb Supreme Court's conclusion that defendant understood and waived his rights under *Miranda* and that his statements were voluntarily made (*see People v Williams, supra* at 289). Notably, while defendant challenged the voluntariness of his statements at trial (*see* CPL 710.70 [3]), the People presented the unrefuted testimony of a psychologist who reviewed defendant's records, which reflected an IQ score of 62 (at age 14), which he characterized as on the higher range of mildly mentally

retarded. His examination of defendant included reviewing with defendant each of the rights encompassed by *Miranda*, which defendant was able to paraphrase, leading to his conclusion that, at the time of his arrest, defendant possessed an understanding of the warnings and rights involved.

Crew III, J.P., Peters, Lahtinen and Kane, JJ., concur. Ordered that the judgment is affirmed.