■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v PIERRE LYONS, Appellant. [771 NYS2d 585]—

Cardona, P.J. Appeal from a judgment of the County Court of Albany County (Breslin, J.), rendered June 19, 2000, upon a verdict convicting defendant of the crime of intimidating a victim or witness in the third degree.

On October 4, 1996, Matthew Parsons, Zakee Abdul-Hameed, Lavell Jones, Carl "Haniff" Dukes and defendant forced their way into Eric Mitchell's apartment at 195 Clinton Avenue in the City of Albany. After incapacitating and robbing two persons in the apartment, they stole property belonging to Mitchell, who was not present. Parsons and Abdul-Hameed were the first to be arrested and charged in connection with these crimes. On February 18, 1997, after Mitchell and the other two victims were subpoenaed to testify at preliminary hearings, Mitchell

was shot to death at his apartment. On February 27, 1997, defendant was interviewed by Albany Detectives Michael Sbuttoni and Ronald Matos concerning the October 1996 crimes. Defendant implicated Dukes and Jones in the robbery, burglary and the shooting, and himself in the robbery and burglary only. Defendant was arrested based upon his participation in the October 1996 incident and eventually pleaded guilty to robbery in the third degree in full satisfaction of the charges against him.

By the end of October 1997, Jones and Dukes were arrested for Mitchell's murder. By that time, Matos and Sbuttoni, who had begun to suspect defendant's involvement in the murder, traveled to Georgia on November 10, 1997, to interview him. After administering *Miranda* warnings, they obtained a written statement in which he essentially stated that, on the night of the murder, he accompanied Dukes and Jones as far as Mitchell's apartment building, watched them enter the basement area, kept walking and heard what sounded like a gunshot, but did not see anything nor did he know that anyone was going to be shot.

At his May 1999 trial, Jones asserted an alibi defense. As a result, arrangements were made to have defendant appear and give testimony placing Jones at the Mitchell apartment on the night of the murder. Upon his arrival at the courthouse on May 19, 1999, defendant met with Matos and Sbuttoni and reviewed the statement that he gave in Georgia. When asked what he was going to say in court, defendant offered a different version of events on the night of the murder. He stated that Dukes was worried about Mitchell testifying or seeking some type of retribution so Dukes wanted to go back to the apartment to "squash the beef." Defendant also indicated that when he, Dukes and Jones reached Mitchell's apartment, he was told by Dukes to stay on the stairs as a lookout. Defendant complied and then heard a knock on the door, someone answering and a "bang or thump." He saw Jones and Dukes leave the area.

Based upon the above statements, defendant was arrested for murder and transported to the detective office where, after waiving his *Miranda* rights, he gave two written statements which incorporated his oral statements and further indicated that he knew Dukes carried a gun or some type of weapon on a regular basis, that he (defendant) also wanted to "squash" "the robbery thing" and, when Dukes and Jones left Mitchell's apartment, Dukes had a gun. Defendant was indicted on two counts of murder in the second degree and one count of intimidating a victim or witness in the third degree. County Court denied

defendant's motion to suppress his incriminating statements and, following a jury trial, he was found guilty of intimidating a victim or witness in the third degree and sentenced to $1^1/_3$ to 4 years in prison.

Defendant contends that County Court erred by denying his motion to suppress his oral and written incriminating statements because they were obtained in violation of his right to counsel. The state constitutional right to counsel indelibly attaches (1) upon "the commencement of formal proceedings" or (2) "where an uncharged individual has actually retained a lawyer . . ., or while in custody, has requested a lawyer" (*People v West*, 81 NY2d 370, 373-374 [1993]). Here, we are only concerned with the applicability of the second scenario, retention of a lawyer, and note that a defendant seeking suppression of statements bears the burden of establishing that he or she was represented by counsel at the time of questioning (*see People v Rosa*, 65 NY2d 380, 386 [1985]).

Defendant initially argues that his right to counsel survived the disposition of his prior robbery charge. We find no support for that argument in this record. There is no proof that cooperation as a future witness was a condition of his plea agreement in reference to the robbery charge. Rather, the evidence shows that he voluntarily agreed to testify in the Jones trial and no attorney appeared with him on the day that he was to testify in Albany. We find that defendant's right to counsel, derived from representation on the prior robbery charge, expired with the disposition of that charge (*see People v Robles*, 72 NY2d 689, 692 [1988]). Therefore, he was not represented by counsel when questioned in Georgia and New York. Consequently, his statements were not obtained in violation of his right to counsel.

Defendant also seeks suppression of his incriminating statements made at the courthouse and police station on May 19, 1999 because they were obtained without the required *Miranda* warnings. The evidence shows, however, that defendant was not in custody at the courthouse at the time that he made his incriminating oral statements and, therefore, the *Miranda* warnings were not required (*see Miranda v Arizona*, 384 US 436, 444 [1966]; *People v Harris*, 48 NY2d 208, 215 [1979]). The applicable standard for determining custody is "whether a reasonable person innocent of any crime, would have felt free to leave" (*People v Harris, supra* at 215). Defendant arrived at the courthouse on May 19, 1999 on his own. The meeting took place in an empty jury room on the fourth floor of the courthouse. During the time that defendant reviewed his statement and told the detectives what his testimony would be, he was neither

handcuffed, restrained nor prevented from leaving the room. In our view, defendant was not in custody until after he was placed under arrest at the courthouse. Moreover, after his arrest and transportation to the police station, he was read his *Miranda* warnings and voluntarily waived them prior to making the additional statements admitted at trial. Accordingly, there is no basis to suppress his oral and written incriminating statements based upon a violation of his *Miranda* rights.

Next, defendant claims that his statements made at the courthouse and the police station were elicited through false promises and, therefore, involuntarily made. Examining the totality of the circumstances existing when the statements were given (*see People v Anderson*, 42 NY2d 35, 38 [1977]; *People v Williamson*, 245 AD2d 966, 967 [1997], *lv denied* 91 NY2d 946 [1998]), we find the detectives' assertion that everything would be alright if defendant told the truth was neither a promise that he would not be prosecuted nor a promise of lenient treatment. Therefore, defendant's will was not overborne nor his statements coerced (*see People v Williamson, supra* at 968; *People v Richardson*, 202 AD2d 958, 958-959 [1994], *lv denied* 83 NY2d 914 [1994]). We conclude that the assurance given by the detectives "did not create 'a substantial risk that . . . defendant [might] falsely incriminate himself' " (*People v Richardson, supra* at 959, quoting *People v Fox*, 120 AD2d 949, 949 [1986], *lv denied* 68 NY2d 812 [1986]; *see* CPL 60.45 [2] [b] [i]; *People v Williamson, supra* at 968). Accordingly, we find defendant's statements were voluntarily made.

We turn to defendant's contention that the trial evidence was legally insufficient to convict him of the crime of intimidating a victim or witness in the third degree. That crime is committed, under the theory charged herein, when "knowing that another person possesses information relating to a criminal transaction and other than in the course of that criminal transaction or immediate flight therefrom, he . . . [w]rongfully compels or attempts to compel such other person to refrain from communicating such information to any court, grand jury, prosecutor, police officer or peace officer by means of instilling in him a fear that the actor will cause physical injury to such other person or another person" (Penal Law § 215.15 [1]). Here, defendant's statement that he accompanied Dukes and Jones to Mitchell's apartment knowing that Dukes was worried about Mitchell testifying and that he (defendant) shared Dukes's desire to "squash" "the robbery thing," together with independent evidence that Mitchell was shot to death, when viewed in a light most favorable to the People (*see People v Contes*, 60 NY2d 620, 621 [1983]),

provided a "valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the jury" (*People v Bleakley*, 69 NY2d 490, 495 [1987]) that defendant was guilty of intimidating a victim or witness in the third degree beyond a reasonable doubt (*see People v Jones*, 283 AD2d 665, 668 [2001], *lv denied* 96 NY2d 903 [2001]). Furthermore, we find the People's independent evidence of the occurrence of the crime satisfied the minimal corroboration requirement of CPL 60.50 that some "additional proof that the offense charged has been committed" (*see People v Lipsky*, 57 NY2d 560, 571 [1982]; *People v Jones, supra* at 668).

Mercure, Peters, Spain and Carpinello, JJ., concur. Ordered that the judgment is affirmed.