(April 15, 2004)

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v PHYLLIS R. COMFORT, Appellant. [775 NYS2d 127]—

Mugglin, J. Appeal from a judgment of the County Court of Chemung County (Buckley, J.), rendered December 15, 1997, upon a verdict convicting defendant of the crime of murder in the second degree.

Following an intensive missing person search, the three-year-old victim's body, which had a bathrobe sash and a sock tied tightly around his neck, was discovered in a room in the cellar of the house occupied by the 24-year-old defendant (the victim's aunt) and defendant's sister and parents. Defendant confessed to having strangled her nephew and was convicted by a jury of murder in the second degree and sentenced to 15 years to life imprisonment. On appeal, defendant asserts that her intellectual limitations prevented her from knowingly and intelligently waiving her *Miranda* rights which rendered her oral confession involuntary and her later written statements "fruit of the poisonous tree." Thus, defendant argues that it was re-

versible error for County Court to refuse to order the suppression of these confessions. We disagree and affirm.

Where, as here, defendant has properly challenged statements made by her, it is the People's burden to establish beyond a reasonable doubt that such statements were voluntarily made (*see People v Witherspoon*, 66 NY2d 973, 974 [1985]). The People established the legality of the police conduct and the waiver by defendant. Thus, the burden shifted to defendant to establish that her statement was involuntary by reason of her diminished mental capacity (*see People v Love*, 57 NY2d 998, 999 [1982]; *People v Hughes*, 280 AD2d 694, 695 [2001], *lv denied* 96 NY2d 801 [2001]; *People v Duncan*, 279 AD2d 887, 888 [2001], *lv denied* 96 NY2d 828 [2001]; *People v Guillery*, 267 AD2d 781, 781 [1999], *lv denied* 94 NY2d 920 [2000]).

This record reveals that defendant, along with the other members of the household, were transported to the police department. At approximately 3:30 P.M., defendant was taken to the office of one of the detectives who, after asking her for her name, address, telephone number and the names of the other household members, immediately read the *Miranda* warnings to her from a card. Defendant answered "yes" when asked if she understood her rights and again when she was asked if she was willing to answer questions without an attorney. For approximately two hours, defendant steadfastly denied involvement in the death of the child. At that time the police officer, indicating to defendant that they should start over, showed her a piece of paper on which he had written "mistake or on purpose." After defendant responded "mistake," she gave a detailed confession concerning how she had choked the child and secreted the body in the basement. Defendant was then given a rights waiver form, which she read and completed in her own handwriting. Her oral statement was then reduced to writing. She read it, acknowledged it as true and correct, and completed a second waiver form. Thereafter, following the administration of a lie detector test, defendant's second statement was typed and she read it and signed it. Again, she acknowledged this statement to be true and correct and that she was aware of her right to have an attorney and had waived such right.

In an effort to refute the voluntariness of her oral confession, defendant called as a witness in the *Huntley* hearing a neuropsychologist who had previously examined her and given her a battery of tests. The neuropsychologist testified that, due to defendant's "moderately impaired range of attention and concentration," it would be a very difficult task for her to fully

understand and comprehend what was read to her (the *Miranda* warnings) in contrast to her reading them herself. He found that defendant "was functioning in the borderline mentally retarded range [and] at a level where she has mild to moderate cognitive deficits." On cross-examination, the neuropsychologist admitted that he did not specifically examine defendant's ability to understand *Miranda* warnings and conceded that, as a matter of vocabulary, she would have no difficulty, with one or two exceptions, understanding the words used. He remained concerned that she may not have "truly appreciated the meaning behind the words and understood the implications for her."

Whether a waiver was knowing and voluntary "is essentially a factual issue that must be determined according to the circumstances of each case" (*People v Williams*, 62 NY2d 285, 288 [1984]), and "[f]actual determinations made by the suppression court are entitled to great weight and will not be disturbed unless clearly erroneous" (*People v Burns*, 281 AD2d 704, 705 [2001], *lv denied* 96 NY2d 826 [2001]; *see People v Guillery*, *supra* at 781). Moreover, "[a]n effective waiver of *Miranda* rights may be made by an accused of subnormal intelligence so long as it is established that he or she understood the immediate meaning of the warnings" (*People v Williams, supra* at 287). A "defendant's impaired intelligence is but one factor to be considered in the totality of circumstances voluntariness analysis where, as here, there is no evidence of mental retardation 'so great as to render the accused completely incapable of understanding the meaning and effect of [the] confession' " (*People v Marx*, 305 AD2d 726, 728 [2003], *lv denied* 100 NY2d 596 [2003], quoting *People v Williams*, 62 NY2d 285, 289 [1984] [internal quotations and citations omitted]). "[T]he inquiry focuses on defendant's ability 'to grasp the basic concepts that [she] could refuse to talk to the investigator or that [she] could ask to speak to a lawyer' " (*People v Marx, supra* at 728, quoting *People v Ferguson*, 285 AD2d 901, 902 [2001], *lv denied* 96 NY2d 939 [2001]). Here, County Court closely scrutinized the totality of the circumstances under which defendant's waiver was made (*see People v Anderson*, 42 NY2d 35, 38 [1977]), and we find no basis in the record to disturb County Court's conclusion that defendant comprehended the *Miranda* rights to the extent necessary to validly waive those rights. In view of this conclusion, defendant's contention that the first and second written statements must be suppressed as fruits of the poisonous tree is meritless (*see generally People v Bethea*, 67 NY2d 364 [1986]).

We have examined defendant's remaining contention and find it to be equally meritless.

Cardona, P.J., Mercure, Crew III and Carpinello, JJ., concur. Ordered that the judgment is affirmed.