■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v LARRY POULIOT, Appellant. [883 NYS2d 372]—

Spain, J. Appeal from a judgment of the County Court of Madison County (DiStefano, J.), rendered July 12, 2007, convicting defendant upon his plea of guilty of the crime of attempted criminal sexual act in the first degree.

Based upon allegations that defendant had subjected two girls, ages seven and eight, to sexual contact in April or May 2006, State Police Investigator David Verne spoke with defendant at the State Police barracks. After receiving *Miranda* warnings, defendant confessed, among other things, to having sexual contact with the eight year old, blaming the child for "throwing herself" at him, and signed a written statement describing the incident. Indicted for attempted criminal sexual acts in the first degree and other crimes relating to both girls, defendant moved to suppress his oral and written statements. At the *Huntley* hearing, Verne testified to the circumstances of his interview with defendant, and another investigator recounted observing Verne read the statement aloud to defendant, one sentence at a time, and confirm that defendant understood each sentence and that it was correct, prior to defendant signing it. The defense

called Norman Lesswing, a forensic and clinical psychologist who had evaluated defendant and administered intelligence and other tests to him while incarcerated, to assess his competency to understand *Miranda* warnings. Lesswing concluded that defendant's IQ score of 66 placed him in the mildly mentally retarded range, that his verbal comprehension scores were "extremely low" and that he read at a third grade level. He opined that defendant's ability to understand *Miranda* warnings was "significantly limited," and that it was "challenging" for defendant to understand verbal communication.

County Court denied the motion to suppress statements made by defendant prior to completion of his written statement. The court concluded that while the defense had raised a reasonable doubt as to whether defendant understood the *Miranda* warnings, defendant's statements were not the result of a custodial interrogation, obviating the need for *Miranda* warnings. Defendant subsequently entered a guilty plea to attempted criminal sexual act in the first degree in satisfaction of the entire indictment, and was sentenced as a second felony offender to a prison term of 15 years followed by five years of postrelease supervision. Defendant now appeals, solely challenging County Court's *Huntley* ruling.

On appeal, defendant contends that suppression was compelled because his statements were both involuntarily obtained and the product of a custodial interrogation without an effective waiver of *Miranda* warnings (*see* CPL 60.45). As an initial matter, County Court, in rendering its decision, appears not to have rendered a conclusion of law as to the voluntariness of defendant's statements (*see* CPL 710.60 [6]). However, the court made extensive factual findings, there was a full and fair hearing on the motion to suppress, and the record is adequate to permit this Court to make its own conclusion of law on voluntariness (*see People v Brady*, 16 NY2d 186, 188 [1965]; *People v Soto*, 253 AD2d 359, 359 [1998], *lv denied* 92 NY2d 1039 [1998]; *see also Matter of Andre S.*, 51 AD3d 1030, 1032 [2008], *lv denied* 11 NY3d 705 [2008]). Upon review, we are guided by the principle that the voluntariness of an inculpatory statement is determined by looking at the totality of the circumstances under which it was obtained (*see People v Anderson*, 42 NY2d 35, 38 [1977]; *see also People v Mateo*, 2 NY3d 383, 413, 414 [2004], *cert denied* 542 US 946 [2004]; *People v McLean*, 59 AD3d 861, 863 [2009]). Relatedly, whether a statement was taken in a custodial setting requiring a valid waiver of *Miranda* rights turns on "whether a reasonable person innocent of any wrongdoing would have believed that he or she was not free

to leave" (*People v Paulman*, 5 NY3d 122, 129 [2005]; *see People v Baggett*, 57 AD3d 1093, 1094 [2008]).

Here, the uncontroverted suppression testimony established that Verne approached defendant on the porch of his brother's home, where he was living; when asked if he would come in for questioning, defendant voluntarily drove his own car, accompanied by his wife, to the police station, arriving at about 2:25 P.M. While his wife spoke with another investigator, defendant went with Verne into his office, where Verne offered him a beverage, and left the room briefly; Verne then read *Miranda* warnings and ascertained that defendant was willing to talk with him. Verne alone questioned him for just over an hour, until about 3:48 P.M., when defendant's narrative written statement was completed; each of the *Miranda* warnings at the top of the statement were read aloud to him, he initialed each one and then, after the statement was read aloud, defendant signed it. Defendant was not restrained, arrested, handcuffed, threatened, yelled at or mistreated. He never requested to leave or to cease the interview, and he did not ask for an attorney, a phone call or family assistance; when defendant became upset and cried several times during the interview, questioning ceased for a time and he was comforted.

Notably, while defendant has impaired intelligence and limited verbal comprehension ability, a "defendant's impaired intelligence is but one factor to be considered in the totality of circumstances voluntariness analysis where, as here, there is no evidence of mental retardation 'so great as to render the accused completely incapable of understanding the meaning and effect of [the] confession' " (*People v Marx*, 305 AD2d 726, 728 [2003], *lv denied* 100 NY2d 596 [2003], quoting *People v Williams*, 62 NY2d 285, 289 [1984]; *see People v Comfort*, 6 AD3d 871, 873 [2004]). As a factual matter, we do not find that Verne's equivocal responses to defendant's questions about whether he was going to jail constituted a promise that created a substantial risk that he might falsely incriminate himself, so as to render his statement involuntary (*see* CPL 60.45 [2] [b] [i]; *see also People v McLean*, 59 AD3d at 862-863). Also relevant is defendant's past experience with the criminal justice system; he was at the time already a risk level three sex offender based upon a 2002 third degree rape conviction (*see People v McLean*, 59 AD3d at 863; *People v Lind*, 20 AD3d 765, 766 [2005], *lv denied* 5 NY3d 830 [2005]). Given the totality of these circumstances, including the overall short duration of the questioning and the absence of any evidence that it was done in an unduly coercive or threatening manner, we are unpersuaded that the

police conduct was such as to "overbear . . . defendant's will" (*People v Bridges*, 16 AD3d 911, 912 [2005], *lv denied* 4 NY3d 884 [2005]; *see People v Mateo*, 2 NY3d at 414-415; *People v McLean*, 59 AD3d at 864) or to "undermin[e] his ability to make a choice whether or not to make a statement" (CPL 60.45 [2] [a]). Thus, we find that the People met their burden of demonstrating beyond a reasonable doubt that defendant's statements were voluntary (*see People v Rosa*, 65 NY2d 380, 386 [1985]; *People v Brown*, 46 AD3d 1128, 1129 [2007]).

According deference to County Court's factual findings which are supported by the testimony of the police investigators, whom the court credited, we discern no error in its conclusion that defendant's statements were made in a noncustodial setting, obviating the need for *Miranda* warnings (*see People v Centano*, 76 NY2d 837, 837-838 [1990]; *People v Locke*, 25 AD3d 877, 878-879 [2006], *lv denied* 6 NY3d 835 [2006]; *see also People v Paulman*, 5 NY3d at 129). The unrefuted testimony established that defendant appeared at the police station voluntarily, he was never arrested or restrained, the atmosphere of the questioning was not coercive and it did not have an accusatory tone. Defendant never sought to end the relatively short period of questioning or to leave. From the viewpoint of a reasonable person in defendant's position, innocent of any wrongdoing, the record supports the court's conclusion that defendant was free to leave and was not in custody until after providing an incriminating statement to police (*see People v Paulman*, 5 NY3d at 129; *People v Centano*, 76 NY2d at 837-838; *People v Yukl*, 25 NY2d 585, 589 [1969], *cert denied* 400 US 851 [1970]; *People v Locke*, 25 AD3d at 878-879; *People v Lyons*, 4 AD3d 549, 551 [2004]; *cf. People v Baggett*, 57 AD3d at 1094-1095). Thus, defendant was not entitled to suppression of his oral or written statements based upon his failure to fully comprehend, or any violation of, his *Miranda* rights.

Cardona, P.J., Rose, Kane and Garry, JJ., concur. Ordered that the judgment is affirmed.